B1 (Official Form 1)(1/08)

| United States Bankruptcy Court<br>Southern District of Florida | Voluntary Petition |
|---|---|

| Name of Debtor (if individual, enter Last, First, Middle):<br>**Lucky Chase II, LLC** | Name of Joint Debtor (Spouse) (Last, First, Middle): |
|---|---|
| All Other Names used by the Debtor in the last 8 years<br>(include married, maiden, and trade names): | All Other Names used by the Joint Debtor in the last 8 years<br>(include married, maiden, and trade names): |
| Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN<br>(if more than one, state all)<br>20-2467904 | Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN<br>(if more than one, state all) |
| Street Address of Debtor (No. and Street, City, and State):<br>**P.O. Box 90160**<br>**Pittsburgh, PA**<br>ZIP Code **15224** | Street Address of Joint Debtor (No. and Street, City, and State):<br>ZIP Code |
| County of Residence or of the Principal Place of Business:<br>**Allegheny** | County of Residence or of the Principal Place of Business: |
| Mailing Address of Debtor (if different from street address):<br>ZIP Code | Mailing Address of Joint Debtor (if different from street address):<br>ZIP Code |
| Location of Principal Assets of Business Debtor<br>(if different from street address above): | **13841 Southwest 90th Avenue**<br>**Miami, FL 33176** |

| Type of Debtor<br>(Form of Organization)<br>(Check one box) | Nature of Business<br>(Check one box) | Chapter of Bankruptcy Code Under Which<br>the Petition is Filed (Check one box) |
|---|---|---|
| ☐ Individual (includes Joint Debtors)<br>*See Exhibit D on page 2 of this form.*<br>☑ Corporation (includes LLC and LLP)<br>☐ Partnership<br>☐ Other (If debtor is not one of the above entities, check this box and state type of entity below.) | ☐ Health Care Business<br>☑ Single Asset Real Estate as defined in 11 U.S.C. § 101 (51B)<br>☐ Railroad<br>☐ Stockbroker<br>☐ Commodity Broker<br>☐ Clearing Bank<br>☐ Other | ☐ Chapter 7<br>☐ Chapter 9<br>☑ Chapter 11<br>☐ Chapter 12<br>☐ Chapter 13    ☐ Chapter 15 Petition for Recognition of a Foreign Main Proceeding<br>☐ Chapter 15 Petition for Recognition of a Foreign Nonmain Proceeding |
| | **Tax-Exempt Entity**<br>(Check box, if applicable)<br>☐ Debtor is a tax-exempt organization under Title 26 of the United States Code (the Internal Revenue Code). | Nature of Debts<br>(Check one box)<br>☐ Debts are primarily consumer debts, defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."    ☑ Debts are primarily business debts. |

| Filing Fee (Check one box) | Chapter 11 Debtors |
|---|---|
| ☑ Full Filing Fee attached<br><br>☐ Filing Fee to be paid in installments (applicable to individuals only). Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form 3A.<br><br>☐ Filing Fee waiver requested (applicable to chapter 7 individuals only). Must attach signed application for the court's consideration. See Official Form 3B. | Check one box:<br>☐ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).<br>☑ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).<br>Check if:<br>☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,190,000.<br>Check all applicable boxes:<br>☐ A plan is being filed with this petition.<br>☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b). |

**Statistical/Administrative Information**

☑ Debtor estimates that funds will be available for distribution to unsecured creditors.
☐ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors.

THIS SPACE IS FOR COURT USE ONLY

Estimated Number of Creditors

| ☑<br>1-49 | ☐<br>50-99 | ☐<br>100-199 | ☐<br>200-999 | ☐<br>1,000-5,000 | ☐<br>5,001-10,000 | ☐<br>10,001-25,000 | ☐<br>25,001-50,000 | ☐<br>50,001-100,000 | ☐<br>OVER 100,000 |
|---|---|---|---|---|---|---|---|---|---|

Estimated Assets

| ☐<br>$0 to $50,000 | ☐<br>$50,001 to $100,000 | ☐<br>$100,001 to $500,000 | ☐<br>$500,001 to $1 million | ☐<br>$1,000,001 to $10 million | ☑<br>$10,000,001 to $50 million | ☐<br>$50,000,001 to $100 million | ☐<br>$100,000,001 to $500 million | ☐<br>$500,000,001 to $1 billion | ☐<br>More than $1 billion |
|---|---|---|---|---|---|---|---|---|---|

Estimated Liabilities

| ☐<br>$0 to $50,000 | ☐<br>$50,001 to $100,000 | ☐<br>$100,001 to $500,000 | ☐<br>$500,001 to $1 million | ☐<br>$1,000,001 to $10 million | ☑<br>$10,000,001 to $50 million | ☐<br>$50,000,001 to $100 million | ☐<br>$100,000,001 to $500 million | ☐<br>$500,000,001 to $1 billion | ☐<br>More than $1 billion |
|---|---|---|---|---|---|---|---|---|---|

B1 (Official Form 1)(1/08)                                                                                           Page 2

| **Voluntary Petition** | Name of Debtor(s): |
|---|---|
| *(This page must be completed and filed in every case)* | **Lucky Chase II, LLC** |

| **All Prior Bankruptcy Cases Filed Within Last 8 Years** (If more than two, attach additional sheet) | | |
|---|---|---|
| Location<br>Where Filed:  - None - | Case Number: | Date Filed: |
| Location<br>Where Filed: | Case Number: | Date Filed: |

| **Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor** (If more than one, attach additional sheet) | | |
|---|---|---|
| Name of Debtor:<br>- None - | Case Number: | Date Filed: |
| District: | Relationship: | Judge: |

| **Exhibit A** | **Exhibit B** |
|---|---|
| (To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.)<br><br>☐  Exhibit A is attached and made a part of this petition. | (To be completed if debtor is an individual whose debts are primarily consumer debts.)<br>I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter. I further certify that I delivered to the debtor the notice required by 11 U.S.C. §342(b).<br><br>X _____<br>   Signature of Attorney for Debtor(s)         (Date) |

| **Exhibit C** |
|---|
| Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?<br><br>☐  Yes, and Exhibit C is attached and made a part of this petition.<br>■  No. |

| **Exhibit D** |
|---|
| (To be completed by every individual debtor. If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.)<br>☐  Exhibit D completed and signed by the debtor is attached and made a part of this petition.<br>If this is a joint petition:<br>☐  Exhibit D also completed and signed by the joint debtor is attached and made a part of this petition. |

| **Information Regarding the Debtor - Venue**<br>(Check any applicable box) |
|---|
| ■   Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.<br><br>☐   There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.<br><br>☐   Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District. |

| **Certification by a Debtor Who Resides as a Tenant of Residential Property**<br>(Check all applicable boxes) |
|---|
| ☐   Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following.)<br><br>_____<br>(Name of landlord that obtained judgment)<br><br><br>_____<br>(Address of landlord)<br><br>☐   Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and<br><br>☐   Debtor has included in this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition.<br><br>☐   Debtor certifies that he/she has served the Landlord with this certification. (11 U.S.C. § 362(l)). |

B1 (Official Form 1)(1/08)                                                                                                    Page 3

| Voluntary Petition | Name of Debtor(s): |
|---|---|
| *(This page must be completed and filed in every case)* | Lucky Chase II, LLC |

**Signatures**

<table>
<tr><td colspan="2"><b>Signature(s) of Debtor(s) (Individual/Joint)</b></td><td colspan="2"><b>Signature of a Foreign Representative</b></td></tr>
</table>

<div style="display:flex">
<div>

**Signature(s) of Debtor(s) (Individual/Joint)**

I declare under penalty of perjury that the information provided in this petition is true and correct.
[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7. [If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U.S.C. §342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _____
Signature of Debtor

X _____
Signature of Joint Debtor

_____
Telephone Number (If not represented by attorney)

_____
Date

**Signature of Attorney***

X *Arthur J. Spector*
Signature of Attorney for Debtor(s)

Arthur J. Spector 620777
Printed Name of Attorney for Debtor(s)

Berger Singerman, P.A.
Firm Name

350 E. Las Olas Boulevard
10th Floor
Fort Lauderdale, FL 33301
Address

Email: aspector@bergersingerman.com
954-525-9900  Fax: 954-523-2872
Telephone Number

4/29/09
Date

*In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect.

**Signature of Debtor (Corporation/Partnership)**

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X *Scott Deaktor*
Signature of Authorized Individual

Scott I. Deaktor
Printed Name of Authorized Individual

Manager
Title of Authorized Individual

4/29/09
Date

</div>
<div>

**Signature of a Foreign Representative**

I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition.

(Check only one box.)

☐ I request relief in accordance with chapter 15 of title 11, United States Code. Certified copies of the documents required by 11 U.S.C. §1515 are attached.

☐ Pursuant to 11 U.S.C. §1511, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached.

X _____
Signature of Foreign Representative

_____
Printed Name of Foreign Representative

_____
Date

**Signature of Non-Attorney Bankruptcy Petition Preparer**

I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19 is attached.

_____
Printed Name and title, if any, of Bankruptcy Petition Preparer

_____
Social-Security number (If the bankruptcy petition preparer is not an individual, state the Social-Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.)(Required by 11 U.S.C. § 110.)

_____
Address

X _____

_____
Date

Signature of Bankruptcy Petition Preparer or officer, principal, responsible person, or partner whose Social-Security number is provided above.

Names and Social-Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual:

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.

*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both 11 U.S.C. §110; 18 U.S.C. §156.*

</div>
</div>

## MANAGER'S CERTIFICATE
## OF
## BRIARWOOD HOLDINGS, LLC

I am the Manager of Briarwood Holdings, LLC, a Florida limited liability company (the "Member"), the sole member of Lucky Chase II, LLC, a Florida limited liability company (the "Company") and as such have access to the records of the Member and the Company and am personally familiar with and knowledgeable concerning the matters herein certified:

1.    Attached hereto as <u>Exhibit A</u> is a true and correct copies of resolutions adopted by the Company and the Member each dated as of April 24, 2009 (the "Resolutions"), and such Resolutions are in full force and effect on and as of the date hereof, not having been amended, altered or repealed; and such Resolutions are filed with the records of the Company and the Member.

2.    Attached hereto as <u>Exhibit B</u>, is a true and correct copy of the Operating Agreement of the Company (the "Operating Agreement"), which Operating Agreement has been in full force and effect in said form since its adoption by the Company to and including the date hereof, without modification or amendment in any respect.

3.    Attached hereto as <u>Exhibit C</u> is a true and correct copy of the Articles of Organization of the Company and such Articles are in full force and effect on and as of the date hereof, and there have been no amendments or supplements to or restatements of such Articles since the date of the Company's organization.

5.    Attached hereto as <u>Exhibit D</u>, is a true and correct copy of the Operating Agreement of the Member (the "Operating Agreement"), which Operating Agreement has been in full force and effect in said form since its adoption by the Member to and including the date hereof, without modification or amendment in any respect.

6.    Attached hereto as <u>Exhibit E</u> is a true and correct copy of the Articles of Organization of the Member and such Articles are in full force and effect on and as of the date hereof, and there have been no amendments or supplements to or restatements of such Articles since the date of the Member's organization.

7.    That set forth below is the names of the duly appointed signatories of the Member:

| NAME | OFFICE | SIGNATURE |
|------|--------|-----------|
| Scott I. Deaktor | Manager | |

2087477-1

IN WITNESS WHEREOF, the undersigned has executed and delivered this Manager's Certificate of Briarwood Holdings, LLC, a Florida limited liability company, as of the 29th day of April, 2009.

BRIARWOOD HOLDINGS, LLC

By: _____
Scott I. Deaktor

2087477-1

# EXHIBIT A

# RESOLUTIONS

# LUCKY CHASE II, LLC

## WRITTEN CONSENT OF THE SOLE MEMBER

The undersigned, being the sole member of LUCKY CHASE II, LLC, a Florida limited liability company (the "Company") does hereby consent in writing to the adoption of the following resolutions:

**WHEREAS,** the undersigned Member has determined that it is in the best interest of the Company, and upon the recommendation of the Company's professional advisors, have determined that it is desirable, fair, reasonable, and in the best interest of the Company and its creditors, members and other interested parties for the Company to file a petition seeking relief under the provisions of Chapter 11 of Title 11, United States Code (the "Bankruptcy Code").

**NOW, THEREFORE, BE IT**

### Filing and Prosecution of Bankruptcy Case

**RESOLVED,** that it is desirable and in the best interest of the Company and its creditors, members, and other interested parties to authorize the Manager of Company, the Chief Restructuring Officer (hereinafter defined), the President, the Chief Financial Officer, and the General Counsel, or such other officer(s) of the Company as they shall from time to time designate, to cause to be filed one or more petitions in the name of the Company (collectively, the "Chapter 11 Petition") seeking relief under the provisions of Chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 case"); and it is further

**RESOLVED,** that the Manager, the Chief Restructuring Officer, the President, the Chief Financial Officer, the General Counsel, or any other officer of the Company, be, and each hereby is, authorized and directed to execute the Chapter 11 Petition and to cause the same to be filed in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court"), in such form and at such time as such officer(s) shall determine; and it is further

**RESOLVED,** that the Manager, the Chief Restructuring Officer, the President, the Chief Financial Officer, and the General Counsel, or such other officer(s) of the Company as they shall from time to time designate (each, an "Authorized Officer"), be, and each hereby is, authorized and directed to take all actions necessary to restructure the financial affairs of the Company, including causing to be filed in the bankruptcy case one or more Disclosure Statement(s) and a Plan(s) of Reorganization (collectively, the "Plan"), and to seek confirmation of the Plan by the Bankruptcy Court, with such amendments as may be required by the Bankruptcy Court; and it is further

**RESOLVED,** that the Authorized Officers be, and each hereby is, authorized to execute and file (or direct others to do so on behalf of the Company as provided herein) all necessary documents, including, without limitation, all petitions, affidavits, schedules, motions, lists, applications, pleadings and other papers, and in connection therewith, to employ and retain all

assistance by legal counsel, accountants or other professionals and to take any and all action which they deem necessary and proper in connection with the Chapter 11 case.

### Employment of Professionals

**RESOLVED**, that the law firm of Berger Singerman P.A. be, and hereby is, employed under general retainer as bankruptcy counsel for the Company in the Chapter 11 case, and the Authorized Officers of the Company are hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers prior to and immediately upon the filing of a Chapter 11 case and cause to be filed an appropriate application for authority to retain the services of Berger Singerman P.A.; and it is further

**RESOLVED**, that the Manager approves the engagement of Keith F. Cooper ("Cooper") to serve as "Chief Restructuring Officer" (herein so called) of the Company in the Chapter 11 case, and the Authorized Officers of the Company are hereby authorized and directed to determine which firm to engage or to execute appropriate retention agreements, pay appropriate retainers prior to and immediately upon the filing of a Chapter 11 case and cause to be filed an appropriate application for authority to retain the services of Cooper; and it is further

**RESOLVED**, that the Manager approves the engagement of FTI Consulting, Inc. ("FTI") or another person or firm as the financial advisor for the Company in the Chapter 11 case, and the Authorized Officers of the Company and the Authorized Officers of the Company are hereby authorized and directed to determine which firm to engage or to execute appropriate retention agreements, pay appropriate retainers prior to and immediately upon the filing of a Chapter 11 case and cause to be filed an appropriate application for authority to retain the services of FTI or other financial advisor, as applicable; and it is further]

**RESOLVED**, that the Manager approves the engagement by FTI, as CRO for the Company, on behalf of, and in the name of, the Company, of any person or firm as the investment banker for the Company in the Chapter 11 case, and the Authorized Officers of the Company are hereby authorized and directed to determine which firm to engage or to execute appropriate retention agreements, pay appropriate retainers prior to and immediately upon the filing of a Chapter 11 case and cause to be filed an appropriate application for authority to retain the services of such investment banker, as applicable; and it is further

**RESOLVED**, that the Authorized Officers of the Company be, and they hereby are, authorized and directed to employ any other firm as professionals or consultants to the Company as are deemed necessary to represent and assist the Company in carrying out its duties under the Bankruptcy Code and, in connection therewith, the Authorized Officers of the Company are hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers prior to and immediately upon the filing of a Chapter 11 case and cause to be filed an appropriate application for authority to retain the services of such firm; and it is further

**RESOLVED**, that all acts lawfully done or actions lawfully taken by any Authorized Officers of the Company to seek relief under Chapter 11 of the Bankruptcy Code or in connection with the Chapter 11 case, or any matter related thereto, be, and hereby are, adopted,

ratified, confirmed and approved in all respects as the acts and deeds of the Company; and it is further

### General Authorizing, Resolutions

**RESOLVED**, that the Authorized Officers of the Company, and each of them, with full authority to act without the others, hereby is authorized and directed, in the name of and on behalf of the Company, to make, enter into, execute, deliver and file any and all other or further agreements, documents, certificates, materials and instruments, to disburse funds of the Company, to take or cause to be taken any and all other actions, and to incur all such fees and expenses as any such officer deems to be necessary, appropriate or advisable to carry out the purposes of the foregoing resolutions and the transactions contemplated thereunder and/or to successfully complete a Chapter 11 case, the taking of any such action to constitute conclusive evidence of the exercise of such discretionary authority; and it is further

**RESOLVED**, that all authorized acts, transactions, or agreements undertaken prior to the adoption of these resolutions by any officer of the Company in connection with the foregoing matters are hereby authorized, approved, ratified, confirmed and adopted as the acts of the Company; and it is further

**RESOLVED**, that the Authorized Officers of the Company be, and each of them hereby is, authorized, empowered and directed to certify and attest any documents or materials which they deem necessary, desirable or appropriate to consummate the transactions contemplated by the foregoing resolutions, without the necessity of the signature or attestation of any other officer or the affixing of any seal of the Company.

**BE IT FURTHER RESOLVED**, that each of Authorized Officer of the Company, each acting alone and without attestation, is hereby authorized and directed to take all necessary or desirable actions in the name and on behalf of the Company, to consummate the transactions contemplated by these Resolutions, including without limitation, such further documents, agreements, instruments and other writings as any such officer may determine in his sole discretion to be necessary or desirable to consummate such transactions and further, that any and all acts of said officer(s), pursuant to the authority hereby presented and directed, be, and the same hereby are, approved, ratified and accepted as the action of the Company; and

**BE IT FINALLY RESOLVED**, that any and all other actions heretofore taken by the Manager of the Company and said officer(s) in furtherance of the foregoing resolutions are hereby approved, ratified and confirmed in all respects.

IN WITNESS WHEREOF, the undersigned being the sole Member of the Company has executed this Written Consent as of the 29th day of April, 2009.

BRIARWOOD HOLDINGS, LLC

By: _____
Scott I. Deaktor, Manager

2092638-1

# BRIARWOOD HOLDINGS, LLC

## WRITTEN CONSENT OF THE SOLE MEMBER

The undersigned, being the sole member of BRIARWOOD HOLDINGS, LLC, a Florida limited liability company (the "Company") does hereby consent in writing to the adoption of the following resolutions:

**WHEREAS,** the Company is the sole member of Lucky Chase II, LLC, a Florida limited liability company ("Lucky Chase"); and

**WHEREAS,** the undersigned Member has determined that it is in the best interest of Lucky Chase, and upon the recommendation of the Company's professional advisors, have determined that it is desirable, fair, reasonable, and in the best interest of Lucky Chase and Lucky Chase's creditors, members and other interested parties for Lucky Chase to file a petition seeking relief under the provisions of Chapter 11 of Title 11, United States Code (the "Bankruptcy Code").

## NOW, THEREFORE, BE IT

### Filing and Prosecution of Bankruptcy Case

**RESOLVED,** that it is desirable and in the best interest of Lucky Chase and its creditors, members, and other interested parties to authorize the Manager of Lucky Chase, the Chief Restructuring Officer (hereinafter defined), the President, the Chief Financial Officer, and the General Counsel, or such other officer(s) of Lucky Chase as they shall from time to time designate, to cause to be filed one or more petitions in the name of Lucky Chase (collectively, the "Chapter 11 Petition") seeking relief under the provisions of Chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 case"); and it is further

**RESOLVED,** that the Manager, the Chief Restructuring Officer, the President, the Chief Financial Officer, the General Counsel, or any other officer of Lucky Chase, be, and each hereby is, authorized and directed to execute the Chapter 11 Petition and to cause the same to be filed in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court"), in such form and at such time as such officer(s) shall determine; and it is further

**RESOLVED,** that the Manager, the Chief Restructuring Officer, the President, the Chief Financial Officer, and the General Counsel, or such other officer(s) of Lucky Chase as they shall from time to time designate (each, an "Authorized Officer"), be, and each hereby is, authorized and directed to take all actions necessary to restructure the financial affairs of Lucky Chase, including causing to be filed in the bankruptcy case one or more Disclosure Statement(s) and a Plan(s) of Reorganization (collectively, the "Plan"), and to seek confirmation of the Plan by the Bankruptcy Court, with such amendments as may be required by the Bankruptcy Court; and it is further

2092624-1

**RESOLVED**, that the Authorized Officers be, and each hereby is, authorized to execute and file (or direct others to do so on behalf of Lucky Chase as provided herein) all necessary documents, including, without limitation, all petitions, affidavits, schedules, motions, lists, applications, pleadings and other papers, and in connection therewith, to employ and retain all assistance by legal counsel, accountants or other professionals and to take any and all action which they deem necessary and proper in connection with the Chapter 11 case.

### Employment of Professionals

**RESOLVED**, that the law firm of Berger Singerman P.A. be, and hereby is, employed under general retainer as bankruptcy counsel for Lucky Chase in the Chapter 11 case, and the Authorized Officers of Lucky Chase are hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers prior to and immediately upon the filing of a Chapter 11 case and cause to be filed an appropriate application for authority to retain the services of Berger Singerman P.A.; and it is further

**RESOLVED**, that the Manager approves the engagement of Keith F. Cooper ("Cooper") to serve as "Chief Restructuring Officer" (herein so called) of Lucky Chase in the Chapter 11 case, and the Authorized Officers of Lucky Chase are hereby authorized and directed to determine which firm to engage or to execute appropriate retention agreements, pay appropriate retainers prior to and immediately upon the filing of a Chapter 11 case and cause to be filed an appropriate application for authority to retain the services of Cooper; and it is further

**RESOLVED**, that the Manager approves the engagement of FTI Consulting, Inc. ("FTI") or another person or firm as the financial advisor for the Company in the Chapter 11 case, and the Authorized Officers of Lucky Chase and the Authorized Officers of the Company are hereby authorized and directed to determine which firm to engage or to execute appropriate retention agreements, pay appropriate retainers prior to and immediately upon the filing of a Chapter 11 case and cause to be filed an appropriate application for authority to retain the services of FTI or other financial advisor, as applicable; and it is further

**RESOLVED**, that the Manager approves the engagement by FTI, as CRO for the Company, on behalf of, and in the name of, the Company, of any person or firm as the investment banker for the Company in the Chapter 11 case, and the Authorized Officers of Lucky Chase and the Authorized Officers of the Company are hereby authorized and directed to determine which firm to engage or to execute appropriate retention agreements, pay appropriate retainers prior to and immediately upon the filing of a Chapter 11 case and cause to be filed an appropriate application for authority to retain the services of such investment banker, as applicable; and it is further

**RESOLVED**, that the Authorized Officers of Lucky Chase be, and they hereby are, authorized and directed to employ any other firm as professionals or consultants to the Company as are deemed necessary to represent and assist the Company in carrying out its duties under the Bankruptcy Code and, in connection therewith, the Authorized Officers of Lucky Chase are hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers prior to and immediately upon the filing of a Chapter 11 case and cause to be filed an appropriate application for authority to retain the services of such firm; and it is further

**RESOLVED**, that all acts lawfully done or actions lawfully taken by any Authorized Officers of Lucky Chase to seek relief under Chapter 11 of the Bankruptcy Code or in connection with the Chapter 11 case, or any matter related thereto, be, and hereby are, adopted, ratified, confirmed and approved in all respects as the acts and deeds of Lucky Chase; and it is further

### General Authorizing, Resolutions

**RESOLVED**, that the Authorized Officers of Lucky Chase, and each of them, with full authority to act without the others, hereby is authorized and directed, in the name of and on behalf of Lucky Chase, to make, enter into, execute, deliver and file any and all other or further agreements, documents, certificates, materials and instruments, to disburse funds of Lucky Chase, to take or cause to be taken any and all other actions, and to incur all such fees and expenses as any such officer deems to be necessary, appropriate or advisable to carry out the purposes of the foregoing resolutions and the transactions contemplated thereunder and/or to successfully complete a Chapter 11 case, the taking of any such action to constitute conclusive evidence of the exercise of such discretionary authority; and it is further

**RESOLVED**, that all authorized acts, transactions, or agreements undertaken prior to the adoption of these resolutions by any officer of Lucky Chase in connection with the foregoing matters are hereby authorized, approved, ratified, confirmed and adopted as the acts of the Company; and it is further

**RESOLVED**, that the Authorized Officers of Lucky Chase and the Authorized Officers of the Company be, and each of them hereby is, authorized, empowered and directed to certify and attest any documents or materials which they deem necessary, desirable or appropriate to consummate the transactions contemplated by the foregoing resolutions, without the necessity of the signature or attestation of any other officer or the affixing of any seal of the Company.

**BE IT FURTHER RESOLVED,** that each Authorized Officer of Lucky Chase  acting alone and without attestation, is hereby authorized and directed to take all necessary or desirable actions in the name and on behalf of Lucky Chase, and each Authorized Officer of the Company, to consummate the transactions contemplated by these Resolutions, including without limitation, such further documents, agreements, instruments and other writings as any such officer may determine in his sole discretion to be necessary or desirable to consummate such transactions and further, that any and all acts of said officer(s), pursuant to the authority hereby presented and directed, be, and the same hereby are, approved, ratified and accepted as the action of Lucky Chase; and

**BE IT FINALLY RESOLVED**, that any and all other actions heretofore taken by the Manager of Lucky Chase and said officer(s) in furtherance of the foregoing resolutions are hereby approved, ratified and confirmed in all respects.

This Written Consent may be executed in any number of counterparts, each of which shall be deemed an original for all purposes, all of which together shall constitute one and the same Written Consent.

*Signatures on Next Page*

2092624-1

IN WITNESS WHEREOF, the undersigned being the sole Member of the Company has executed this Written Consent as of the 29th day of April, 2009.

LCW COMPANY, LLC

By: _____

Scott I. Deaktor, Manager

**EXHIBIT B**

**OPERATING AGREEMENT- COMPANY**

## OPERATING AGREEMENT

THIS OPERATING AGREEMENT effective as of the _____ day of March, 2005, by and among BRIARWOOD HOLDINGS, LLC., a Florida limited liability company (the "Member") and LUCKY CHASE II, LLC, a Florida limited liability company (the "Company").

## WITNESSETH:

WHEREAS, the Member is the sole owner of membership interests ("Interests") in the Company; and

WHEREAS, the Member and the Company desire to enter into this Operating Agreement to set forth certain rights and obligations pertaining to the management, direction and operation of the Company's business, including the selection of the managers and officers of the Company; and

NOW THEREFORE, in consideration of the premises aforesaid, all of the covenants, agreements, terms and conditions hereinafter set forth and the sum of One Dollar ($1.00) and other good and valuable consideration paid by each of the parties to the other, the receipt and sufficiency of which is hereby acknowledged, the parties hereto do hereby covenant and agree as follows:

(1)    BUSINESS.  The business of the Company is to acquire, and thereafter own, operate, lease, renovate, convert to condominiums, sell and otherwise deal with the property commonly known as the Briarwood Apartments located at 13841 SW 90th Avenue, Miami, Florida (the "Property").

(2)    CONFLICT.  This Agreement, to the extent that it is inconsistent with any other instrument governing the affairs of the Company, including, but not limited to the Company's Articles of Organization and Regulations shall supersede such instrument to the fullest extent permitted by law.  The parties hereto shall take any and all actions required to effect the foregoing supersedure.  A copy of this Agreement shall also be filed at the Company's principal office, if different that the location of the Company's Minute Book.

(3)    MANAGEMENT OF THE COMPANY.  The management, control and operation of the Company shall be governed by the following:

A.    Manager.  The Managers of the Company shall consist of no more than one (1) Manager, who shall be appointed by the Member of the Company, and the initial sole manager shall be Scott I. Deaktor.  Scott I. Deaktor shall remain the Manager until replaced by the Member as provided in this paragraph.  Without limiting the foregoing, Scott I. Deaktor shall remain as Manager for so long as he remains as Manager of the Member.

B.    Powers and Authority of the Manager.

(1)    The Manager of the Company shall manage and conduct the Company's affairs and shall have the power and authority to make all decisions and take all action on behalf of the Company, subject to the limitation provided in subsection (2) below.

(2)    The following matters shall require the approval of the Member:

a.    Any issuance of further Interests of the Company and any increase, reduction, conversion, consolidation or subdivision of the Interests of the Company.

b.    Any substantial change in the provisions in the Articles of Organization of the Company;

c.    The sale, lease, exchange or other disposition of all or substantially all of the Property or assets of the Company not in the ordinary course of business (the sale of condominium units shall be deemed to be in the ordinary course of business).

d.    The winding up or dissolution or termination of the existence of the Company.

e.    The pledging, assigning, hypothecation or otherwise encumbering the Property or any of the Interest issued by Company, subject to the provisions of Section 3(c)(1) below.

f.    The redemption or purchase by the Company of its issued Interests.

g.    Any material change in the business of the Company.

C.    Miscellaneous matters

(1)    The Member expressly approves the Company acquiring (the "Purchase") from Waterton Esprimir, LLC the Property for the approximate sum of Seventy Million Two Hundred Fifty Thousand ($70,250,000) pursuant to a Purchase and Sale Agreement dated January 11, 2005 entered into between Waterton Esprimir, LLC and Deaktor Development, Inc., whose interest in said agreement has been assigned to the Company and the borrowing by the Company from HSBC Bank USA, National Association, of the approximate sum of Sixty Three Million Dollars ($63,000,000) (the "Loan"). The Member also approves Scott I. Deaktor, as Manager, executing any and all documents and agreements necessary in order to complete the closing and funding of the

Purchase and Loan, including, without limitation the granting of mortgages and security interests encumbering the Property. The Member also approves the Manager's execution and delivery of all documents and agreements required by HSBC Capital (USA) Inc. ("Mezzanine Lender") in connection with its making a loan to Member in the approximate amount of Ten Million Three Hundred Thousand Dollars ($10,300,000) and authorizes and directs the Manager to execute and deliver all documents and agreements required by Mezzanine Lender in connection with said Loan including the granting of mortgages and security interests encumbering the Property. In addition to, and without limitation of the foregoing, the Company is hereby authorized to become a beneficiary in a land trust which holds legal title to the Property.

(4)    ENGAGEMENT OF THE MEMBERS AND THEIR AFFILIATES.

A.    The Company may employ affiliates of the Member and/or Deaktor Development, Inc. to perform services for the Company as approved by the Manager or as provided for herein.

B.    The Company shall reimburse affiliates of the Member or the Manager for reasonable out of pocket costs and expenses incurred in connection with the performance of services for the Company subject to the prior approval of the Manager.

(5)    TERMINATION. This Agreement and the obligations and restrictions placed on and the undertakings agreed to by the Member (and the Manager) hereunder shall terminate (except for the indemnifications provided for herein) immediately upon the occurrence of any of the following:

A.    A final decree of bankruptcy against the Company or a dissolution of the Company pursuant to the applicable laws of the state of its organization; or

B.    The execution of an instrument by all of the parties to this Agreement pursuant to which such parties agree to terminate this Agreement.

(6)    NOTICES. All notices, demands, requests, consents and approvals which may or are required to be given or made pursuant to any provisions of this Agreement shall be given or made in writing and shall be served personally or mailed by prepaid certified or registered mail, return receipt requested, by telecopier, hand delivery or overnight courier service, to such address as any of the parties may from time to time advise the other parties hereto by notice in writing. The date of receipt of any such notice, demand or request shall be deemed to be the date of giving of such notice, demand or request if delivered personally, or if mailed, as aforesaid, the fifth (5th) day of business following the date of such mailing, provided that if any such notice, request, demand or other communication shall have been mailed and if regular mail service shall be interrupted by strikes or other irregularities, such notices, requests, demands or other communications shall be deemed to have been received five (5) business days following the resumption of normal mail service.

(7)    MISCELLANEOUS.

A.    Governing Law. The parties acknowledge that this Agreement has been executed and delivered in the State of Florida and shall be governed by and construed and enforced in accordance with the laws of the State of Florida.

B.    Binding Effect; No Assignment. This Agreement shall be binding upon the parties hereto, their heirs, administrators, successors and assigns. No party may assign or transfer its Interests herein, or delegate its duties hereunder, without the written consent of the other party. Any assignment or delegation of duties in violation of this provision shall be null and void.

C.    Amendment. The parties hereby irrevocably agree that no attempted amendment, modification, termination, discharge or change (collectively; "Amendment") of this Agreement shall be valid and effective, unless the parties shall unanimously agree in writing to such Amendment.

D.    No Waiver. No waiver of any provision of this Agreement shall be effective unless it is in writing and signed by the party against whom it is asserted, and any such written waiver shall only be applicable to the specific instance to which it relates and shall not be deemed to be a continuing or future waiver.

E.    Provisions Severable. This Agreement is intended to be performed in accordance with, and only to the extent permitted by, all applicable laws, ordinances, rules and regulations of the jurisdiction in which the parties do business. If any provision of this Agreement, or the application thereof to any person or circumstance shall, for any reason or to any extent, be invalid or unenforceable, the remainder of this Agreement and the application of such provision to other persons or circumstances shall not be, affected thereby, but rather shall be enforced to the greatest extent permitted by law.

F.    No Third-Party Beneficiary. This Agreement is made solely and specifically among and for the benefit of the parties hereto, and their respective heirs, successors and assigns subject to the express provisions hereof relating to successors and assigns, and no other person shall have any rights, Interests or claims hereunder or be entitled to any benefits under or on account of this Agreement as a third-party beneficiary or otherwise.

G.    Remedies. Each party hereto recognizes and agrees that the violation of any term, provision or condition of this Agreement may cause irreparable damage to the other parties which may be difficult to ascertain, and that the award of any sum of damages may not be adequate relief to such parties. Each party, therefore, agrees that, in addition to other remedies available in the event of a breach of this Agreement, any other party shall have a right to equitable relief, including, but not limited to, the remedy of specific performance.

H.    Conflict Waiver. The Member, the Company and the Manager hereby acknowledge and agree that: (I) Fieldstone Lester Shear & Denberg, LLP ("Firm") has only represented the Company and not the Manager or Member in the preparation of this Agreement and may hereafter represent the Company, Member and Manager in other matters; (ii) the Firm has also represented affiliates of the Member or Manager in the past and may do so in the future; (iii) each Party has waived any conflict of interest that exists as a result of such representation; and (iv) each Party has been advised by the Firm to consult with and has in fact consulted with independent legal counsel before entering into this Agreement as a material inducement to the other Parties entering into this Agreement.

I.    Arbitration.  All controversies, disputes or claims arising between the parties in connection with, arising from, or with respect to: (I) any provision of this Agreement or any other agreement related to this Agreement between the parties; (ii) the relationship of the parties; (iii) the validity of this Agreement or any other agreement related to this Agreement between the parties, or any provision thereof, which shall not be resolved within ten (10) days either party shall notify the other in writing of such controversy, dispute or claim, shall be submitted for arbitration to the Miami, Florida office of the American Arbitration Association on demand of either party.  Such arbitration proceedings shall be conducted in Miami, Florida, and except as otherwise provided in this Agreement, shall be conducted in accordance with the then current Commercial Arbitration Rules of the American Arbitration Association.  The arbitrator shall have the right to award or include in this award any relief which he deems proper in the circumstances, including without limitation, money damages (with Interests on unpaid amounts from the due date), specific performance and injunctive relief.  The reward and decision of the arbitrator(s) shall be conclusive and binding upon all parties thereto and judgment upon the award may be entered in any court of competent jurisdiction. This agreement to arbitrate shall continue in full force and effect subsequent to and notwithstanding the expiration or termination of this Agreement.

J.    Entire Agreement.  This Agreement constitutes the entire final agreement among the parties with respect to and supersedes any and all prior agreements among the parties hereto both oral and written concerning the subject matter hereof and may not be amended, modified or terminated except by a writing signed by the parties hereto.

K.    Authority.  Whenever liquidation and dissolution of the Company is required pursuant to this Agreement by vote of the Members or otherwise, the parties hereto agree to cooperate to that end by executing, acknowledging and filing all necessary documents and consents, and by doing any and all other things necessary. Each party grants to each other party his power of attorney to execute all documents required to be executed to effectuate such liquidation and dissolution.

L.    Enforceability. If any provision of this Agreement shall be held to be invalid or unenforceable, such invalidity or unenforceability shall attach only to such provision and shall not in any way affect or render invalid or unenforceable any other

provision of this Agreement, and this Agreement shall be carried out as if such invalid or unenforceable provision were not contained herein.

       M.     Counterparts.  This Agreement may be executed in any number of counterparts, all of which together shall constitute one and the same instrument.

       N.     Waiver.  A waiver of any breach or violation of any term, provision or covenant contained herein shall not be deemed a continuing waiver or a waiver of any future or past breach or violation.

       O.     Further Assurances. Each party hereto covenants and agrees with the other that each of them shall upon the reasonable request of the other of them do, execute or cause to be made, done or executed all such further and lawful acts, deeds, things, devices and assurances whatsoever for the better or more perfect and absolute performance of the terms, conditions and provisions of this Agreement.

THE REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK.

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals as of the day and year first above written.

Signed, sealed and delivered
in the presence of:

MANAGER:

_____
SCOTT I. DEAKTOR

MEMBER:

BRIARWOOD HOLDINGS (Mezzanine), LLC, a Florida limited liability company

By: _____
SCOTT I. DEAKTOR

COMPANY:

_____, a
Florida limited liability company

By: _____
SCOTT I. DEAKTOR
Manager

H:\LIBRARY\Clients\Duke Tower\Docs\Operating Agreement.Florida Horizons(03).doc
4/21/05

**EXHIBIT C**

**ARTICLES OF ORGANIZATION- COMPANY**



# State of Florida

## Department of State

I certify the attached is a true and correct copy of Articles of Organization of LUCKY CHASE II, LLC, a limited liability company, organized under the laws of the State of Florida, filed on March 9, 2005, as shown by the records of this office.

The document number of this company is L05000023760.

Given under my hand and the
Great Seal of the State of Florida
at Tallahassee, the Capitol, this the
Twenty-fifth day of January, 2007

Kurt S. Browning
Secretary of State

CR2E022 (01-07)

00/05  13:24 FAX 3053575761          F L S D  ATTORNEY                                    ☑002

((( H05000059183 3)))

## ARTICLES OF ORGANIZATION FOR FLORIDA LIMITED LIABILITY COMPANY

**ARTICLE I - Name:**

Lucky Chase II, LLC

**ARTICLE II - Address:**

The mailing address and street address of the principal office of the Limited Liability Company is:

c/o Ronald Fieldstone, Esquire
201 Alhambra Circle, Suite 601
Coral Gables, FL 33134

**ARTICLE III - Registered Agent, Registered Office, & Registered Agent's Signature:**

The name and the Florida street address of the registered agent are:

<div align="center">

Ronald R. Fieldstone
Name

201 Alhambra Circle, Suite 601
Florida street address (P.O. Box NOT acceptable)

Coral Gables, Florida 33134
City, State, and Zip

</div>

*Having been named as registered agent and to accept service of process for the above stated limited liability company at the place designated in this certificate, I hereby accept the appointment as registered agent and agree to act in this capacity. I further agree to comply with the provisions of all statutes relating to the proper and complete performance of my duties, and I am familiar with and accept the obligations of my position as registered agent as provided for in Chapter 608, F.S.*

<div align="center">

Registered Agent's Signature

</div>

**Article IV - Management (Check box if applicable.)**

☒ The Limited Liability Company is to be managed by one manager or more managers and is, therefore, a manager - managed company.

<div align="center">

(An additional article must be added if an effective date is requested.)

Signature of a member or an authorized representative of a member.

(In accordance with section 608.408(3), Florida Statutes, the execution of this document constitutes an affirmation under the penalties of perjury that the facts stated herein are true.)

Ronald R. Fieldstone, Authorized Representative
Typed or printed name of signee

</div>

H:\LIBRARY\Clients\Cabrerixo\Riviera\Lot 27 Riviera, LLC.doc

((( H05000059183 3)))

## Marci Shaffer

| | |
|---|---|
| **From:** | Steven Garellek |
| **Sent:** | Monday, April 27, 2009 1:01 PM |
| **To:** | Marci Shaffer |
| **Subject:** | Fw: REGISTER NAME PLEASE |

**From:** ASPIFL@aol.com
**To:** Steven Garellek
**Sent:** Mon Apr 27 11:01:20 2009
**Subject:** REGISTER NAME PLEASE

Please register the fictitious name "Florida Improve Magazine" to ALL STAR MEDIA GROUP.

Please confirm.

Thank you


Morris Staszower
ALL STAR PRINTING
2955 North Powerline Road
Pompano Beach, Florida 33069
Tel: 954 974-0333
Fax: 954 974-0502
www.allstarprintinginc.com

# EXHIBIT D

## OPERATING AGREEMENT- MEMBER

## FIRST AMENDMENT TO OPERATING AGREEMENT

## OF

## BRIARWOOD HOLDINGS, LLC

**THIS FIRST AMENDMENT TO OPERATING AGREEMENT OF BRIARWOOD HOLDINGS, LLC** (this "First Amendment") is made this 20ᵗʰ day of *February*_____, 2007, by and between, BRIARWOOD HOLDINGS, LLC, a Florida limited liability company (the "Company"), and LCW COMPANY, LLC, a Florida limited liability company as the sole member and manager of the Company (the "Member").

### Preliminary Statements:

A.      The Company was created on March 9, 2005, pursuant to the filing of Articles of Organization with the Secretary of State of Florida.

B.      The Operating Agreement, dated March __, 2005, was executed by the original members, Scott I. Deaktor, Marsha P. Deaktor, and Marcia Deaktor (collectively the "Original Members"), a copy of which is attached hereto as Exhibit A (the "Operating Agreement"), and the Operating Agreement governs the management and operation of the Company and the relationship between and among its members and managers.

C.      Pursuant to that certain Assignment of Member, the member interests of the Original Members were transferred to Member on _____, 2007.

D.      The Member desires to amend and modify the Operating Agreement effective immediately.

### Agreement:

**NOW, THEREFORE,** in consideration of the mutual covenants and premises herein contained, and intending to be legally bound hereby, the parties hereto agree as follows:

1.      **Preliminary Statements.**  The parties agree that the Preliminary Statements set forth above are true and correct as of the date hereof and are incorporated herein by this reference.

2.      **Membership Interest.** Effective immediately, the following sections 2.4 and 2.5 are added:

> **2.4      Membership Certificates.** In accordance with Section 608.432(3) of the Act, each interest of a Member in the Company shall be represented by a Certificate of Membership in the form attached hereto as Schedule 2.4. The Company shall maintain a Register of Members which shall contain the name and address of each Member. No transfer of a Member's interest in the Company

558325-1

shall be effective unless and until the Company records such transfer on the Register of Members. The parties hereto agree that the Certificate of Membership shall be in "registered form" as defined by Section 678.1021(1)(m), Florida Statutes, and to the extent that any Certificate of Membership is not in "registered form," the parties agree to amend and modify this Agreement and take and do all such other actions to cause each Certificate of Membership to be in registered form retroactive to the execution of this Agreement.

**2.5    Replacement of Lost or Destroyed Certificate of Membership.**    If a mutilated Certificate of Membership is surrendered to the Company or if the holder of a Member (or any assignee or pledgee of a Member) claims and submits an affidavit or other evidence, satisfactory to the Company, to the effect that the Certificate of Membership has been lost, destroyed or wrongfully taken, the Company shall issue a replacement Certificate of Membership if the Company's requirements are met. If required by the Company, such Member (or any assignee or pledgee of a Member) must provide an indemnity bond, or other form of indemnity, sufficient in the judgment of the Company to protect the Company against any loss which may be suffered. The Company may charge such Member, assignee or pledge for its reasonable out-of-pocket expenses in replacing a Certificate of Membership which has been mutilated, lost, destroyed or wrongfully taken.

**3.    Miscellaneous:** Except as otherwise amended herein, the parties hereby acknowledge and agree that the terms of the Operating Agreement shall continue to govern the management and operation of the Company and the relationship between and among its members and managers. If there is any ambiguity between this First Amendment and the Operating Agreement, the terms and provisions of this First Amendment shall control and supersede the Operating Agreement. This First Amendment shall be controlled by the internal laws of the State of Florida, without regard to principles of conflicts of laws. This First Amendment may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Confirmation of execution by telex or by telecopy or telefax of a facsimile signature page shall be binding upon that party so confirming. This First Amendment, together with the terms and provisions of the Operating Agreement which have not been modified by this First Amendment, represents the entire understanding and agreement between the parties with respect to the subject matter hereof, and supersedes all other negotiations, understandings and representations (if any) made by and between such parties.

558325-1

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement as of the date first set forth above.

COMPANY:

**BRIARWOOD HOLDINGS, LLC**

By:    **LCW COMPANY, LLC,** its sole member

By: _____

Name: _Scott Deprkton_

Title: _MANAGER_

**MEMBER:**

**LCW Company, LLC**

By: _____

Name: _Scott Deprkton_

Title: _MANAGER_

3

558325-1

# OPERATING AGREEMENT
## FOR
## BRIARWOOD HOLDINGS, LLC
a Florida Limited Liability Company

**THIS OPERATING AGREEMENT** (the "Agreement") is made effective as of this ___ day of March, 2005 between **SCOTT I. DEAKTOR** ("Scott"), residing at 616 Saint James Street, Pittsburgh, Pennsylvania, **MARSHA P. DEAKTOR** ("Marsha"), residing at 616 Saint James Street, Pittsburgh, Pennsylvania and **MARCIA A. DEAKTOR** ("Marcia") residing at 5238 Ellsworth Avenue, Pittsburgh, Pennsylvania (Scott, Marsha and Marcia are individually referred to as a "Member" and collectively as the "Members") and **BRIARWOOD HOLDINGS, LLC**, a Florida limited liability company (the "**Company**").

In consideration of the mutual covenants and conditions herein, the Members agree as follows:

## ARTICLE I
## ORGANIZATION

**1.1    Formation and Qualification.**  The Members have formed a limited liability company called Briarwood Holdings, LLC under the Florida Limited Liability Company Act (the "Act") by filing Articles of Organization (the "Articles") with the Florida Department of State.

**1.2    Governing Law.**  This Agreement shall be governed by and construed and interpreted in accordance with the laws of the State of Florida, including the Act as amended from time to time, without regard to Florida's conflicts of laws principles. The rights and liabilities of the Members shall be determined pursuant to the Act and this Agreement. To the extent that any provision of this Agreement is inconsistent with any provision of the Act, this Agreement shall govern to the extent permitted by the Act.

**1.3    Name.**  The name of the Company shall be "Briarwood Holdings, LLC". The business of the Company may be conducted under that name or, on compliance with applicable laws, any other name that the Members deem appropriate or advisable. The Members on behalf of the Company shall file any certificates, articles, fictitious business name statements and the like, and any amendments and supplements thereto, as the Members consider appropriate or advisable.

**1.4    Term.**  The term of the Company commenced on the filing of the Articles of Organization and shall be perpetual unless dissolved as provided in this Agreement.

**1.5    Office and Agent.**  The principal office of the Company shall be at c/o Deaktor Development, 1000 Johanna Drive, Pittsburgh, Pennsylvania, 15237. The Company shall

continuously maintain a registered agent in the State of Florida as required by the Act. The registered agent shall be as stated in the Statement of Registered Agent filed with the Florida Department of State or as otherwise determined by the Members.

1.6    **Purpose of Company.**  The purpose of the Company is to engage in all lawful business activities chosen by its management, with the primary purpose of the Company to become the sole member of Lucky Chase II, LLC, a Florida limited liability company (the "Owner"), which is to acquire the 628-unit apartment project known as Briarwood Apartments located 13841 SW 90th Avenue, Miami, Florida (the "Property") with the intention of converting the Property to condominium ownership (herein collectively referred to as the "Business").

## ARTICLE II
## MEMBERSHIP INTERESTS AND MANAGEMENT

2.1    **Membership Interests.**  The membership interests in the Company (the "Interest") for the Members is set forth on Schedule 2.1 hereof.

2.2    **Management by Managers.**  (a) The Company will be manager-managed. There shall be one (1) Manager. The Manager shall be Scott I. Deaktor who shall remain as Manager unless all of the Members unanimously agree to replace the Manager with another Manager unanimously agreed upon.  All decisions and actions of, or on behalf of the Company shall require the approval of the Manager.

(b) The Members hereby authorize the Company to borrow the approximate sum of Ten Million Three Hundred Thousand Dollars ($10,300,000) (the "Loan") from HSBC Capital (USA) Inc. ("Mezzanine Lender").  In connection therewith the Manager is authorized and directed to take all action which he, in his sole discretion, deems necessary, to consummate said Loan and to execute and deliver all documents required by the Mezzanine Lender in connection therewith, including, without limiting the granting of the Mortgages and security interests in all property of the Company.

2.3    **Liability of Members.**  All debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the Company, and no Member shall be obligated personally for any such debt, obligation or liability of the Company solely by reason of being a Member.

## ARTICLE III
## CAPITAL ACCOUNTS

3.1    **Initial Capital Contributions.**  Each Member to this Agreement shall have an initial Capital Account in the Company equal to his Capital Contributions.

3.2    **Capital Accounts.**  A separate capital account shall be maintained for each Member's ownership interest (the "Capital Account").

The Capital Account of each Member shall be increased by (i) the amount of any cash, services rendered and the fair market value of any property contributed to the Company by such Member (net of any liability secured by such contributed property that the Company is considered to assume or take subject to) or other obligation to contribute cash or property or to perform services, (ii) the amount of income or profits allocated to such Member.

The Capital Account or Accounts of each Member shall be reduced by (i) the amount of any cash and the fair market value of any property distributed to the Member by the Company (net of liabilities secured by such distributed property that the Member is considered to assume or take subject to), (ii) the amount of expenses or loss allocated to the Member. If any property other than cash is distributed to a Member, the Capital Accounts of the Members shall be adjusted as if the property had instead been sold by the Company for a price equal to its fair market value and the proceeds distributed.

## ARTICLE IV
## OFFICERS; QUORUM AND VOTE OF MEMBERS

**4.1    Agents of the Company.**  Subject to the approval of the Manager, the Members may authorize any Member or Members of the Company, or other individuals or entities, whether or not a Member, to take action on behalf of the Company, as they deem appropriate subject to the terms of this Agreement. Any Member may lend money to and receive loans from the Company, act as an employee, independent contractor, lessee, lessor, or surety of the Company, and transact any business with the Company that could be carried out by someone who is not a Member; and the Company may receive from or pay to any Member remuneration, in the form of wages, salary, fees, rent, interest, or any form that the Members (subject to Manager approval) deem appropriate.

**4.2    Meetings of Members.**  No regular, annual, special or other meetings of Members are required to be held. Any action that may be taken at a meeting of Members may be taken without a meeting by written consent in accordance with the Act. Meetings of the Members, for any purpose or purposes, may be called at any time by any Member. The Members must be present either in person and/or telephonically for there to be a quorum in the meeting.

**4.3    Admission of Additional Members.**  The Members can, by unanimous consent only, from time to time, admit additional Members to the Company on terms and conditions that they deem appropriate.  All then existing Members shall be diluted on a prorata basis to the extent new Members are admitted.

## ARTICLE V
## ALLOCATIONS AND DISTRIBUTIONS

**5.1    Allocations of Profits and Losses.**  Profits and Losses shall be allocated among the Members in proportion to their percentage ownership Interests and in accordance with their

Interests, subject to any effect on such allocations as a result of the Section 754 election to be made by the Company, as set forth below.

5.2    **Distributions.**

5.2.1    All distributions shall be made to the Members in proportion to their Interests. The decision as to whether to make distributions shall be within the reasonable discretion of the Manager taking into account the reserve requirements of the Company.

5.2.2    All such distributions shall be made only to the Members who, according to the books and records of the Company, are the holders of record on the actual date of distribution. The Members may base a determination that a distribution of cash may be made on a balance sheet, profit and loss statement, cash flow statement of the Company or other relevant information.

5.3    **Special Allocation.**

5.3.1    It is the intent of the Members that all allocations (including allocations based upon liquidation) of income, gain and loss (or items thereof) of the Company shall be made in a manner which complies with provisions of Section 704(b) of the Code and the Treasury Regulations thereunder and which reflects the Members' interests in the Company as determined under Treasury Regulations Section 1.704 1(b)(3).    In furtherance of the foregoing, the Managers are authorized and directed to allocate income, gain, loss or deduction in a manner which is inconsistent with Section 5.1 to the extent necessary to comply with Section 704(b) of the Code and the Treasury Regulations thereunder (the "704(b) Regulations").

5.3.2    In addition, (i) items of loss and deduction attributable to "Member Nonrecourse Debt" (as defined in the 704(b) Regulations) shall be allocated as provided in the 704(b) Regulations; (ii) if, during any period, there is a net decrease in the amount of the Company's "Minimum Gain" (as defined in the 704(b) Regulations), or in the amount of Minimum Gain attributable to Member Nonrecourse Debt, then the Members shall be allocated items of income or gain for such period and subsequent periods to the extent and in the manner provided in Treasury Regulations Section 1.704 2(f) and Section 1.704 (2)(1)(4) as "Minimum Gain Chargebacks" (as defined in the 704(b) Regulations); (iii) the Company shall make such allocations of income as shall be required by a "Qualified Income Offset" provision (as defined in the 704(b) Regulations), as described in Treasury Regulations Section 1.704 1(b)(2)(ii)(d); and (iv) in no event shall losses or deductions be allocated to a Member if such allocation would result in such Member having a negative Adjusted Capital Account Balance.    Notwithstanding the provisions of Section 4.1, any nonrecourse deductions (as defined in Treasury Regulations Section 1.704 2(b)(1)) for any fiscal year or other period shall be specifically allocated to the Members in proportion to their respective Percentage Interests.

# ARTICLE VI
## TRANSFER AND ASSIGNMENT OF INTERESTS

**6.1    Restrictions on Transfer and Withdrawal.** Except (i) as otherwise provided in this Article VI or (ii) as approved by the unanimous consent of all of the Members, no Member shall withdraw from the Company or sell, hypothecate, pledge, assign or otherwise transfer (each, a "Transfer"), with or without consideration, any part or all of his or her Interest in the Company to any other person or entity. Any and all Transfers or attempted Transfers of Interests in violation of or without full compliance with this Agreement shall be null, void and without legal effect. The Company shall refuse to recognize and shall not reflect on its records any proposed Transfer of Ownership Interests pursuant to attempted Transfers that are not in accord with this Agreement. Each Member acknowledges the reasonableness of the restrictions on Transfers imposed by this Agreement in view of the purposes and objectives of this Agreement and the particular relationship of the Members.

**6.2**    Nothing set forth in this Article VI shall be deemed to prohibit or restrict (or otherwise require the consent of any other Members with respect to), any assignment or transfer of any Member's Interest, or any assignment or transfer of any direct or indirect beneficial interest in any Member's Interest to any Affiliate of the assigning or transferring Member (as verified by evidence reasonably acceptable to the Managers or to a Family Member (meaning any individual spouse, parents, children, siblings, grandchildren or trust created solely for the benefit of such individuals) of the individual(s) who own and control any Member, either directly or indirectly, as of the date hereof (as verified by evidence reasonably acceptable to the Managers). "Affiliate" means with respect to a person or entity, any person, firm or entity that, directly or indirectly, controls, is controlled by or is under common control with such person or entity. The term "control" shall mean the ownership, directly or indirectly, of fifty percent (50%) or more of the beneficial interests in a firm or entity. For purposes of any provisions in this Agreement relating to transactions between the Company and any Affiliates, an Affiliate shall also be deemed to include any person or entity owning more than a ten percent (10%) interest in such entity or having any right to receive payments from such entity.

**6.3    Death, Incompetency or Bankruptcy of Member.** If a principal of a Member dies, his or her executor, administrator or trustee, or, if he or she is adjudicated incompetent or insane, his or her committee, guardian or conservator, or, if he, she or it becomes bankrupt, the trustee or receiver of such Person's estate, shall have all of the rights of a principal of a Member, subject to Article VI, for the purpose of settling or managing such estate and such power as the decedent, incompetent or bankrupt Person possessed to assign all or any part of such Person's interest in a Member. The death, dissolution, adjudication of incompetence or Bankruptcy of a Member shall not dissolve the Company.

**6.4    Rights of Assignee of Record.** Any Assignee of Record shall be entitled to receive distributions from the Company attributable to the Member Interest (or portion thereof) acquired by reason of such assignment from and after the effective date of the assignment of such Member Interest to it; provided, however, that the Company and the Manager shall be

5

entitled to treat the assignor of such Member Interest as the absolute owner thereof in all respects, and shall incur no liability for allocations of Profits or Losses, or for distributions or transmittal of reports and notices required to be given to Members hereunder, which are made in good faith to such assignor until such time as the written instrument of assignment has been received by the Company and recorded on its books and the effective date of the assignment has passed.  Provided the Company has actual notice of an assignment of a Member Interest, the effective date of such assignment on which the Assignee shall be deemed an Assignee of Record shall be the first Business Day following the later to occur of (i) the Company's receipt of the written instrument of assignment, and (ii) the date of the assignment set forth in the written instrument of assignment.  Any Person who is an Assignee or Assignee of Record with respect to a Member Interest, but who does not become a Substituted Member and desires to make a further assignment of any such Interest, shall be subject to all of the provisions of this Article VI to the same extent and in the same manner as any Member desiring to make an assignment of its Member Interest.  Until admitted as a Substituted Member, an Assignee or Assignee of Record shall have no right to inspect the Company's books and records or to exercise voting rights or any other right or privilege as a Member hereunder.

6.5    **"Assignee of Record"** means a Person who has been assigned the beneficial interest in all or a portion of an Interest pursuant to Article 9 of this Agreement, and whose ownership of the beneficial interest in the Interest (i) has been recorded on the books of the Company, and (ii) is the subject of a written instrument of assignment, the effective date of which assignment has passed.

6.6    **Prohibition on Transfers Changing Company's Tax Status.**  No transfer of any Member Interest shall be made if, in the opinion of the Company's counsel, such transfer would result in the Company being treated as a corporation for tax purposes.

6.7    **Transfers in Violation of Restrictions Void.**  Any sale, assignment or other transfer in contravention of any of the provisions of this Article 6 shall be void and of no force or effect, and shall not be binding upon or be recognized by the Company.  In addition, in the event of any transfer in violation of this Agreement, and anything in this Agreement to the contrary notwithstanding, the transferring Member shall not be entitled (to the extent otherwise permitted hereunder) to participate in the management of the Company from and after the date of the purported transfer and all decisions regarding the Company shall be made exclusively by the non-transferring Member(s) (to the extent otherwise permitted hereunder).  No consent to one or more such transfers shall be construed as a consent to any other transfer of the same or any other Member's interest in the Company.

6.8    **Substituted Members.**  Subject to the provisions of this Article VI, any Assignee or Assignee of Record may become a Substituted Member when all of the following conditions have been satisfied:

(a)    A duly executed and acknowledged written instrument of assignment shall have been filed with the Company, which instrument shall (A) specify the Member Interest being

assigned, and (B) set forth the intention of the assignor that the Assignee or Assignee of Record succeed to the assignor's Member Interest as a Substituted Member;

(b)    The assignor and Assignee or Assignee of Record shall have executed such other instrument(s) as the Manager may deem necessary or desirable to effect such substitution, including the written acceptance and assumption by the Assignee or Assignee of Record of the provisions of this Agreement;

(c)    Except as otherwise provided in this Agreement, the written consent of the Manager to such substitution shall have been obtained, the granting or denial of which shall be within the absolute discretion of the Manager; and

(d)    The other provisions of this Article VI shall have been complied with.

**6.9    Mezzanine Loan.**  Notwithstanding anything to the contrary contained herein, the Members are permitted to pledge their interests in the Company to Mezzanine Lender pursuant to such documents and agreements as the Mezzanine Lender shall require.  The Mezzanine Lender shall (notwithstanding anything to the contrary contained in this Agreement) have all rights, privileges and benefits provided for in any documents executed and/or delivered by a Member to the Mezzanine Lender, and the rights of the Mezzanine Lender thereafter shall not be limited by any provisions contained in this Operating Agreement.

## ARTICLE VII
## ACCOUNTING, RECORDS AND REPORTING

**7.1    Books and Records.**  The Company shall maintain complete and accurate accounts in proper books of all transactions of or on behalf of the Company and shall enter or cause to be entered therein a full and accurate account of all transactions on behalf of the Company. The Company's books and accounting records shall be kept in accordance with such accounting principles (which shall be consistently applied throughout each accounting period) as the Members may determine to be convenient and advisable.

**7.2    Inspection of Books and Records.**  Each Member has the right, on reasonable request for purposes reasonably related to the interest of the person as a Member or a Manager, to: (a) inspect and copy during normal business hours any of the Company's records described in Section 7.1 above; and (b) obtain from the Company promptly after their becoming available a copy of the Company's federal, state and local income tax or information returns for each Fiscal Year.

**7.3    Accountings.**  As soon as is reasonably practicable after the close of each Fiscal Year, the Members shall make or cause to be made a full and accurate accounting of the affairs of the Company as of the close of that Fiscal Year and shall prepare or cause to be prepared a balance sheet as of the end of such Fiscal Year, a profit and loss statement for that Fiscal Year and a statement of Members' equity showing the respective Capital Accounts of the Members as

of the close of such Fiscal Year and the distributions, if any, to Members during such Fiscal Year, and any other statements and information necessary for a complete and fair presentation of the financial condition of the Company, all of which the Managers shall furnish to each Member. In addition, the Company shall furnish to each Member information regarding the Company necessary for such Member to complete such Member's federal and state income tax returns. The Company shall also furnish a copy of the Company's tax returns to any Member requesting the same. On such accounting being made, profits and losses during such Fiscal Year shall be ascertained and credited or debited, as the case may be, in the books of account of the Company to the respective Members as herein provided.

**7.4    Filings.** The Members, at Company expense, shall cause the income tax returns for the Company to be prepared and timely filed with the appropriate authorities. The Members, at Company expense, shall also cause to be prepared and timely filed with appropriate federal and state regulatory and administrative bodies amendments to, or restatements of, the Articles and all reports required to be filed by the Company with those entities under the Act or other then current applicable laws, rules, and regulations. If the Company is required by the Act to execute or file any document and fails, after demand, to do so within a reasonable period of time or refuses to do so, any Member may prepare, execute and file that document with the Florida Department of State.

**7.5    Bank Accounts.** The Company shall maintain its funds in one or more separate bank accounts in the name of the Company, and shall not permit the funds of the Company to be co-mingled in any fashion with the funds of any other Person.

**7.6    Tax Matters.** The Members shall from time to time cause the Company to make such tax elections as they deem to be in the interests of the Company and the Members generally.

## ARTICLE VIII
## DISSOLUTION AND WINDING UP

**8.1    Dissolution.** Unless otherwise provided by the Act, this Agreement or the Company's formation documents filed with the Florida Department of State, the Company shall be dissolved, its assets shall be disposed of, and its affairs wound up on the first to occur of: (i) the entry of a decree of judicial dissolution pursuant to the Act; or (ii) the unanimous approval of all of the Members.

**8.2    Winding Up.** On the occurrence of an event specified in Section 8.1, the Company shall continue solely for the purpose of winding up its affairs in an orderly manner, liquidating its assets and satisfying the claims of its creditors. The Members shall be responsible for overseeing the winding up and liquidation of Company, shall take full account of the assets and liabilities of Company, shall cause such assets to be sold or distributed, and shall cause the proceeds therefrom, to the extent sufficient therefor, to be applied and distributed as provided in Section 8.4. The Members shall give written notice of the commencement of winding up by mail

to all known creditors and claimants whose addresses appear on the records of the Company. The Members shall be entitled to reasonable compensation for such services.

**8.3    Distributions in Kind.**  Any non-cash assets distributed to the Members shall first be valued at their fair market value to determine the profit or loss that would have resulted if such assets were sold for such value. Such profit or loss shall then be allocated pursuant to this Agreement, and the Members' Capital Accounts shall be adjusted to reflect such allocations. The amount distributed and charged against the Capital Account of each Member receiving an interest in a distributed asset shall be the fair market value of such interest (net of any liability secured by such asset that such Member assumes or takes subject to). The fair market value of such asset shall be determined by the Members, or if any Member objects, by an independent appraiser (and any such appraiser must be recognized as an expert in valuing the type of asset involved) selected by the Members.

**8.4    Order of Payment of Liabilities on Dissolution.**  After a determination that all known debts and liabilities of the Company in the process of winding up, including, without limitation, debts and liabilities to Members who are creditors of the Company, have been paid or adequately provided for, the remaining assets shall be distributed to the Members in proportion to their positive Capital Account balances, after taking into account profit and loss allocations for the Company's taxable year during which liquidation occurs.

**8.5    Adequacy of Payment.**  The payment of a debt or liability, whether the whereabouts of the creditor is known or unknown, shall have been adequately provided for if payment thereof shall have been assumed or guaranteed in good faith by one or more financially responsible Persons or by the United States government or any agency thereof, and the provision, including the financial responsibility of the Person, was determined in good faith and with reasonable care by the Members to be adequate at the time of any distribution of the assets pursuant to this Section. This Section shall not prescribe the exclusive means of making adequate provision for debts and liabilities.

**8.6    Limitations on Payments Made in Dissolution.**  Except as otherwise specifically provided in this Agreement, each Member shall only be entitled to look solely to the assets of the Company for the return of such Member's positive Capital Account balance and shall have no recourse for such Member's Capital Contribution or share of profits (on dissolution or otherwise) against any other Member.

**8.7    Articles of Dissolution.**  The Members conducting the winding up of the affairs of the Company shall cause to be filed in the office of, and on a form prescribed by the Florida Department of State, Articles of Dissolution of the Company on the completion of the winding up of the affairs of the Company.

## ARTICLE IX
## EXCULPATION AND INDEMNIFICATION

**9.1    Exculpation of Members.**  No Member shall be liable to the Company or to the other Members for damages or otherwise with respect to any actions taken or not taken in good faith and reasonably believed by such Member to be in or not opposed to the best interests of the Company, except to the extent any related loss results from fraud, gross negligence or willful or wanton misconduct on the part of such Member or the material breach of any obligation under this Agreement or of the fiduciary duties owed to the Company or the other Members by such Member.

**9.2    Indemnification by Company.**  The Company shall indemnify, hold harmless and defend the Members, in their capacity as Members or Manager, from and against any loss, expense, damage or injury suffered or sustained by them by reason of any acts or omissions arising out of their activities on behalf of the Company or in furtherance of the interests of the Company, including but not limited to any judgment, award, settlement, reasonable attorneys' fees and other costs or expenses incurred in connection with the defense of any actual or threatened action, proceeding or claim, if the acts or omissions were not performed or omitted fraudulently or as a result of gross negligence or willful misconduct by the indemnified party. Reasonable expenses incurred by the indemnified party in connection with any such proceeding relating to the foregoing matters may be paid or reimbursed by the Company in advance of the final disposition of such proceeding upon receipt by the Company of (i) written affirmation by the Person requesting indemnification of its good-faith belief that it has met the standard of conduct necessary for indemnification by the Company and (ii) a written undertaking by or on behalf of such Person to repay such amount if it shall ultimately be determined by a court of competent jurisdiction that such Person has not met such standard of conduct, which undertaking shall be an unlimited general obligation of the indemnified party but need not be secured.

**9.3    Insurance.**  The Company shall have the power to purchase and maintain insurance on behalf of any Person who is or was a Member or an agent of the Company against any liability asserted against such Person and incurred by such Person in any such capacity, or arising out of such Person's status as a Member or an agent of the Company, whether or not the Company would have the power to indemnify such Person against such liability under this Agreement or under applicable law.

## ARTICLE X
## MISCELLANEOUS

**10.1    Authority.**  This Agreement constitutes a legal, valid and binding agreement of the Member, enforceable against the Member in accordance with its terms. The Member is empowered and duly authorized to enter into this Agreement. The Person, if any, signing this Agreement on behalf of the Member is empowered and duly authorized to do so by the governing document or trust instrument, pension plan, charter, certificate of incorporation, bylaw provision, board of directors or stockholder resolution or the like.

**10.2    Indemnification by the Members.**  The Members hereby agree to indemnify and defend the Company, the other Members and each of their respective employees, agents,

partners, members, shareholders, officers and directors and hold them harmless from and against any and all claims, liabilities, damages, costs and expenses (including, without limitation, court costs and attorneys' fees and expenses) suffered or incurred on account of or arising out of any breach of this Agreement.

**10.3   Notices.**   Except as otherwise provided in this Agreement, any notice, request, instruction or other document required or permitted to be given hereunder by any party to the other parties (or any of them) shall be in writing and shall be delivered personally or mailed by certified mail, postage prepaid, return receipt requested or by national overnight carrier (e.g., Federal Express) by pre-paid freight deliverable on a Business Day (such mailed notice to be effective on the date on which such receipt is acknowledged), addressed to such parties at their respective addresses set forth in the first paragraph of this Agreement. In addition to the parties listed above, each party hereto may request that written notices and other communications be sent to such other place and with such other copies as such party may designate as to itself by written notice to the other parties.

**10.4   Severability.**   If any provision of this Agreement, or the application of such provision to any Person or circumstance, shall be held by a court of competent jurisdiction to be invalid or unenforceable, the remainder of this Agreement, or the application of such provision to Persons or circumstances other than those to which it is held to be invalid or unenforceable, shall not be affected thereby.

**10.5   Binding Effect.**   This Agreement shall bind and inure to the benefit of the parties and their respective Successors.

**10.6   Counterparts.**   This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Faxed copies shall be treated as originals.

**10.7   Entire Agreement.**   This Agreement contains the entire agreement of the parties and supersedes all prior or contemporaneous written or oral negotiations, correspondence, understandings and agreements between or among the parties, regarding the subject matter hereof.

**10.8   Further Assurances.**   Each Member shall provide such further information with respect to the Member as the Company may reasonably request, and shall execute such other and further certificates, instruments and other documents, as may be necessary and proper to implement, complete and perfect the transactions contemplated by this Agreement.

**10.9   Parties in Interest.**   Except as expressly provided in the Act or in this Agreement, nothing in this Agreement shall confer any rights or remedies under or by reason of this Agreement on any persons other than the Members and their respective successors nor shall anything in this Agreement relieve or discharge the obligation or liability of any third person to

any party to this Agreement, nor shall any provision give any third person any right of subrogation or action over or against any party to this Agreement.

10.10  **Amendments.** Except as otherwise expressly provided herein, no amendment or modification of this Agreement shall have any effect, unless done in writing, stating with specificity the particular amendment or modification to be made and signed by all of the Members.

10.11  **Attorneys' Fees.** In any dispute between or among the Company and one or more of the Members, the prevailing party or parties in such dispute shall be entitled to recover from the non-prevailing party or parties all reasonable fees, costs and expenses including, without limitation, attorneys' fees, costs and expenses, all of which shall be deemed to have accrued on the commencement of such action, proceeding or arbitration. Attorneys' fees shall include, without limitation, fees incurred in any post-award or post-judgment motions or proceedings, contempt proceedings, garnishment, levy, and debtor and third party examinations, discovery, and bankruptcy litigation, and prevailing party shall mean the party that is determined in the arbitration, action or proceeding to have prevailed or who prevails by dismissal, default or otherwise.

10.12  **Remedies Cumulative.** Remedies under this Agreement are cumulative and shall not exclude any other remedies to which any Member may be lawfully entitled.

10.13  **Arbitration.** If any controversy hereunder arises between the Members, it is understood and agreed that the matter shall be submitted to arbitration to such party(s) as shall be approved by all of the Members. If the Members are unable to agree on the selection of arbitrators, then each Member shall select one (1) arbitrator, which selections shall take place no later than fifteen (15) days after a claim of arbitration is demanded by any party ("Filing Date") and the two (2) selected arbitrators shall mutually agree on the selection of a third arbitrator within thirty (30) days after the Filing Date. If the two (2) selected arbitrators fail to agree on the selection of a third arbitrator within such period of time, then the director or other appointed representative of the American Arbitration Association, Miami Office, shall select the third arbitrator. The ruling of a majority of the arbitrators shall prevail in any dispute. Any decision of the arbitrators shall be final and binding upon the parties hereto and enforceable in any court of competent jurisdiction.

10.14  **Jurisdiction and Venue/Equitable Remedies.** Subject to the arbitration provisions set forth above, each of the Members hereto irrevocably and unconditionally submits to the exclusive jurisdiction of any Florida court or federal court of the United States of America sitting in Miami-Dade County, Florida and any appellate court from any thereof, in any action or proceeding arising out of or relating to this Agreement that requires injunctive relief or to enforce an arbitration award, and each of the Members hereto hereby irrevocably and unconditionally agrees that all such claims in respect of such action or proceeding may be heard and determined in any such Florida court or, to the extent permitted by law, in such federal court. Each of the Members hereto agrees that a final judgment in any such action or proceeding shall

be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

**10.15 Interpretation of the Agreement.** The Members acknowledge that this Agreement is the product of mutual efforts by the Members and their respective agents. This Agreement shall be interpreted neither more favorable in favor of one party, nor less favorably in favor of another party.

**10.16 Transfer/ Injunctive Relief.** Each Member acknowledges that in the event of any Transfer or attempted Transfer by such Member in breach of this Agreement, the other Members hereto (i) would be irreparably and immediately harmed by such breach, (ii) could not be made whole by monetary damages, and (iii) shall be entitled to temporary and permanent injunctions (or their functional equivalents) to prevent any such breach and/or to compel specific performance with this Agreement.

**10.17 No-Waivers.** The waiver by any Member of any other Member's breach of any provision of this Agreement shall not operate nor be construed as a waiver of any subsequent breach, and the waiver by any Member to exercise any right or remedy shall not operate nor be construed as a waiver or bar to the exercise of such right or remedy upon the occurrence of any subsequent breach. No action on the part of any Member to this Agreement shall be interpreted as waiver unless such action shall be in writing.

[Signatures to Follow]

**IN WITNESS WHEREOF**, this Agreement has been duly executed by or on behalf of the parties hereto as of the date first above written.

MEMBERS:

_____
Scott I. Deaktor

_____
Marsha P. Deaktor

_____
Marcia A. Deaktor

COMPANY:

**BRIARWOOD HOLDINGS, LLC**, a Florida limited liability company

By: _____
Scott I. Deaktor, Manager

14

## SCHEDULE 2.1

## MEMBERSHIP INTERESTS

| MEMBER | INTEREST | CAPITAL CONTRIBUTION |
|---|---|---|
| Scott I. Deaktor | 25% | |
| Marsha P. Deaktor | 25% | |
| Marcia A. Deaktor | 50% | |

H:\LIBRARY\Clients\Deaktor\Lakes of Jacaranda\Operating Agreement -briarwood(4).doc

**Schedule 2.4**

**Form of Certificate**

558325-1

CERTIFICATE NUMBER 1

MEMBERSHIP INTEREST 100%

Organized as a limited liability company under the laws of

THE STATE OF FLORIDA

# BRIARWOOD HOLDINGS, LLC

(the "Company")

CERTIFICATE OF MEMBERSHIP INTEREST

This Certifies that LCW Company, LLC is the registered holder of a one hundred percent (100%) membership Interest transferable only on the books of the Company by the holder hereof in person or by Attorney upon surrender of this Certificate properly endorsed. All rights, duties and obligations relating to this membership interest shall be governed by that Operating Agreement executed by the Company and its members, dated effective as of March __, 2005, as amended from time to time.

*In Witness Whereof,* the said Company caused this certificate to be signed by its duly authorized member and its Seal to be hereunto affixed this __2ᵈ__ day of February A.D. 2007.

Scott I. Deaktor, Manager

558122-1

# EXHIBIT E

## ARTICLES OF ORGANIZATION- MEMBER



### State of Florida

#### Department of State

I certify from the records of this office that BRIARWOOD HOLDINGS, LLC, is a limited liability company organized under the laws of the State of Florida, filed on March 9, 2005.

The document number of this company is L05000023766.

I further certify that said company has paid all fees due this office through December 31, 2005, and its status is active.

Authentication Code: 305A00016576-031005-L05000023766-1/1

Given under my hand and the
Great Seal of the State of Florida,
at Tallahassee, the Capital, this the
Tenth day of March, 2005



*Glenda E. Hood*
Glenda E. Hood
Secretary of State

(((H05000059184 3)))

## ARTICLES OF ORGANIZATION FOR FLORIDA LIMITED LIABILITY COMPANY

**ARTICLE I - Name:**

Briarwood Holdings, LLC

**ARTICLE II - Address:**

The mailing address and street address of the principal office of the Limited Liability Company is:

c/o Ronald Fieldstone, Esquire
201 Alhambra Circle, Suite 601
Coral Gables, FL 33134

**ARTICLE III - Registered Agent, Registered Office, & Registered Agent's Signature:**

The name and the Florida street address of the registered agent are:

Ronald R. Fieldstone
Name

201 Alhambra Circle, Suite 601
Florida street address (P.O. Box NOT acceptable)

Coral Gables, Florida 33134
City, State, and Zip

*Having been named as registered agent and to accept service of process for the above stated limited liability company at the place designated in this certificate, I hereby accept the appointment as registered agent and agree to act in this capacity. I further agree to comply with the provisions of all statutes relating to the proper and complete performance of my duties, and I am familiar with and accept the obligations of my position as registered agent as provided for in Chapter 608, F.S.*

Registered Agent's Signature

**Article IV – Management (Check box if applicable.)**

☒ The Limited Liability Company is to be managed by one manager or more managers and is, therefore, a manager – managed company.

(An additional article must be added if an effective date is requested)

Signature of a member or an authorized representative of a member.

(In accordance with section 608.408(3), Florida Statutes, the execution of this document constitutes an affirmation under the penalties of perjury that the facts stated herein are true.)

Ronald R. Fieldstone, Authorized Representative
Typed or printed name of signee

H:\LIBRARY\Clients\Cabrerizo\Riviera\Lot 27 Riviera, LLC.doc