## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

In re:                                                    Case No.  09-18087-RAM

LUCKY CHASE II, LLC.

                                                          Chapter 11 Case

      Debtor.

_____/

### AMTRUST's MOTION FOR APPOINTMENT OF TRUSTEE AND
### INCORPORATED MEMORANDUM OF LAW

Creditor, AmTrust Bank, by and through undersigned counsel, hereby files its Motion for Appointment of Trustee and incorporated memorandum of law and in support thereof states:

<u>Facts</u>

1.      LUCKY CHASE II, LLC (the "Developer"), a Florida Limited Liability Company, executed and delivered to Ohio Savings Bank a Promissory Note dated August 10, 2006, in the stated principal amount of Forty-Four Million Four Hundred Thousand Dollars and 00/100 ($44,400,000) (the "Note"). A true and correct copy of the Note is attached to the "List of Exhibits" filed simultaneously herewith as Exhibit "A" and incorporated herein by reference.

2.      Ohio Savings Bank is the predecessor in interest to AmTrust Bank. Ohio Savings Bank later became AmTrust Bank (Both entities are collectively referred to herein as the "Lender").

3.      To secure payment and performance of the Note, Developer, who was in possession of the subject property, also executed and delivered to the Lender a certain Renewal Mortgage and Security Agreement dated August 10, 2006 (the "Mortgage"). A true and correct copy of said mortgage, together with all amendments thereto, if any exist, is

RM:6389922:2

attached to the "List of Exhibits" filed simultaneously herewith as Composite Exhibit "B" and incorporated herein by reference.

4.    The Mortgage was recorded on August 14, 2006, in the Official Records of Miami-Dade County, Florida at Official Records Book 24819, Page 2804 and mortgaged the property described in the document attached to the "List of Exhibits" filed simultaneously herewith as Exhibit "C."

5.    To further secure payment of the Note, the Developer executed (1) an Assignment of Rents and Leases and Agreements Affecting Real Estate dated August 10, 2006 and (2) a Collateral Assignment of Sales Contracts dated August 10, 2006 (the "Assignments"). True and correct copies of the Assignments are attached to the "List of Exhibits" filed simultaneously herewith as Exhibits "D" and "E," respectively, and incorporated herein by reference.

6.    At the time of the execution of the Note and Mortgage, Defendants Scott Deaktor, Marsha Deaktor and Marcia Deaktor executed an Unconditional and Continuing Guaranty and Indemnity Agreement (the "Guaranty") dated August 10, 2006. A true and correct copy of the Guaranty is attached to the "List of Exhibits" filed simultaneously herewith as Exhibit "F" and incorporated herein by reference. Defendants Scott Deaktor, Marsha Deaktor and Marcia Deaktor shall be collectively referred to herein as "Guarantors."

7.    Developer and Guarantors have defaulted under the Note and Mortgage by, among other things, failing to pay the installment payments, principal, together with all interest, fees and costs when said indebtedness came due on August 9, 2008.

RM:6389922:2

8.      Based upon the existing events of default and in accordance with the provisions of the Note and Mortgage, the entire indebtedness thereunder is now due and payable to the Lender.

9.      The Lender directed correspondence to the Developer and the Guarantors informing them, *inter alia*, of the default; that the indebtedness had been accelerated; and demanding payment of all sums due under the Note and Mortgage but, despite said demands, the Developer and Guarantors have failed to pay the amounts presently due the Lender under said loan documents. The Lender has also directed correspondence to the Developer and Guarantors pursuant to Florida Statute § 697.07. A true and correct copy of said correspondence is attached to the "List of Exhibits" filed simultaneously herewith as Exhibit "G" and "H," respectively, and incorporated herein by reference.

10.      The Lender presently owns and holds the Note, Mortgages, Assignments, and Guaranty together with all other related loan documents and any amendments thereto.

11.      The Developer and Guarantors owe the Lender $28,209,824.64 that is due as outstanding principal on the Note, together with accrued interest thereon at the rate(s) specified in the Note.

12.      As of September 25, 2008, the Developer and Guarantors owe the Lender accrued and unpaid interest in the amount of $637,291.64, which continues to accrue at the default rate of the greater of (i) 6% above the Prime rate as in effect on the last day of the immediately preceding calendar month or (ii) 13% per annum, and a per diem in the amount of $10,186.88. The default rate is adjusted monthly.

RM:6389922:2

3

13.     As of September 1, 2008, the Developer and Guarantors owe the Lender $9,862.06 in late charges which continues to accrue.

14.     Lender has also incurred $9,400 in appraisal fees for the property which is still outstanding from the Developer and the Guarantors.

15.     On November 10, 2008 Amtrust filed its four count Amended Foreclosure Complaint seeking [Count I] foreclosure of real estate, [Count II] suit on promissory note, [Count III] appointment of receiver and [Count IV] action on guaranty agreement.

16.     The case was assigned to the Honorable Judge Pedro Echarte; Judge Echarte has already addressed numerous issues and spent considerable judicial effort.

17.     In fact, Judge Echarte has made **very clear**, during previous hearings, in which he dismissed alleged counterclaims and affirmative defenses that said counterclaims and affirmative defenses lack merit.  A copy of the transcript for the hearing conducted on March 17, 2009 is attached to the "List of Exhibits" filed simultaneously herewith as Exhibit "I".

18.     Additionally, a hearing was scheduled for May 14, 2009  to consider Amtrust's Motion to appoint a receiver.

19.     A hearing was also scheduled for April 30, 2009 to consider the Debtor's failure to turn over rents, issues and profits in accordance with Florida Statutes §697.07 (F.S. 2001) and the Demand Letter set forth herein as Exhibits "G" and "H".

20.     A Trustee must be appointed by this Court on an emergency basis as the Debtor has seriously and irreparably damaged AmTrust by committing waste to AmTrust's collateral and subjecting the public to risk of injury by:

RM:6389922:2

(a)    closing at least eight (8) units on the Property out of trust by failing to pay AmTrust the minimum release prices required by the Mortgage. At least one of these units was closed after AmTrust recorded its Notice of Lis Pendens and served it and the Complaint on the Debtor; and

(b)    misleading the public into believing that the units were being sold with a clean title when the Debtor knew it was not obtaining releases from AmTrust upon the sale of the unit. These misrepresentations have damaged the "good will" and "reputation" of the Property and will make it more difficult to sell units; and

(c)    failing to turn over the rents, issues and profits to AmTrust as required by the Assignments and Florida Statute § 697.07 upon demand by AmTrust. A true and correct copy of the correspondence sent to the Debtor is attached to the "List of Exhibits" filed simultaneously herewith as Exhibit "H." In his Declaration in Support of Debtor's Chapter 11 Petition and Request for First Day Relief, Mr. Scott Deaktor, admits that 335 units[1] still have not been sold and that there is a monthly rent roll for these units of approximately $164,729. *See* paragraph 12 of C.P. 5. However, no rents have been turned over to AmTrust after it made its request pursuant to Florida Statute § 697.07 on October 10, 2008; and

(d) failing to obtain AmTrust's written authorization prior to leasing the units referenced in paragraph (c) above. The Mortgage requires AmTrust's prior written authorization before leasing of units can begin. The Debtor began leasing the units without ever requesting or obtaining AmTrust's written authorization to do so; and

(e)    failing to pay AmTrust the "Minimum Release Price" for units sold pursuant to Section 13 of the Loan Agreement executed by Debtor and dated August 10, 2006. A true and

correct copy of the Loan Agreement together with any and all amendments thereto is attached to the "List of Exhibits" filed simultaneously herewith as Exhibit "L"; and

(f)    allowing the 2008 property taxes to become delinquent on the 335 units still held by the Debtor. As Mr. Deaktor admitted in his Declaration, this results in an additional liability on the Property of approximately $1,113,217. *See* paragraph 13 of C.P. 5. This additional liability greatly impairs AmTrust's collateral in that there was little, if any, equity cushion available prior to the imposition of this liability; and

(g)    failing to maintain the property in good condition. An inspection of the property has revealed that there are numerous safety concerns, including broken windows, pools which have been poorly maintained and incomplete sidewalks[2]. Copies of the photos showing these and other hazards are attached to the "List of Exhibits" filed simultaneously herewith as Exhibit "M."

21.    The acts of waste set forth in paragraph 20 above all impair the security of the AmTrust's lien such that the appointment of a Trustee is necessary.

22.    In order to ensure that the property is secure and to protect the public's safety, it is urgent that this Court appoint a Trustee for the purposes of maintaining and protecting the property, and collecting the rental payments pledged to AmTrust.

23.    The Debtor has failed to deliver the rental payments to AmTrust, despite AmTrust's right to those funds by virtue of §697.07 of the Florida Statutes. It is interesting to note, however, that although the Debtor has not turned these rents over to AmTrust after more than six (6)

---

[1] According the AmTrust's records, there are 337 units still held by the Debtor.

[2] AmTrust has also come across an independent website, www.apartmentreviews.net. AmTrust certifies that it had nothing to do with the creation, maintenance or content of this website where tenants at the subject property have posted comments of the property, which state that the property is infested by roaches, the "pools are out of code", it

RM:6389922:2

months, it has found the funds to pay its attorneys more than $117,000 from January 2009 to April

2009. *See* Exhibit "A" to C.P. 5. AmTrust's security is, accordingly, subject to peril.  To prevent

further dissipation of funds and mismanagement of the Property, a trustee should be appointed.

<u>Memorandum of Law</u>

Title 11, U.S.C. Section 1104, provides that: "At any time after the commencement of the

case but before confirmation of a plan, on request of a party in interest or the United States

Trustee, and after notice and hearing, the Court shall order the appointment of a trustee. ... ."

Pursuant to Section 1104(a)(1) and (a)(2), the Bankruptcy Court is given mandatory and

discretionary guidelines for the appointment of a Trustee.  Those subsections provide:

> (1)   For cause, including fraud, dishonesty, incompetence, or gross
> mismanagement of the affairs of the debtor by current management, either before
> or after the commencement of the case, or similar cause, but not including the
> number of holders of securities of the debtor or the amount of assets or liabilities of
> the debtor; or
>
> (2)  If such appointment is in the interest of creditors, any equity security holders,
> and other interests of the estate, without regard to the number of holders of the
> securities of the debtor or the amount of assets or liabilities of the debtor.

The appointment of a Trustee in a Chapter 11 case pursuant to 11 U.S.C. §1104(a) is an

extraordinary remedy and is made on a case-by-case basis.  <u>In re: Sharon Steel Corp.</u>, 871 F.2d

1217 (C.A.3, 1989).  Whether or not to appoint a Trustee is within the sound discretion of the

bankruptcy court.  <u>In Re: Clinton Centrifuge, Inc.</u>, 85 B.R. 980 (Bankr. E.D.Pa. 1988).  The

movant has the burden of proof to show by clear and convincing evidence the need for a Trustee.

<u>In Re: Sharon Steel Corp.</u>, <u>supra</u>.  As demonstrated above, in the instant case the appointment of

a Trustee is appropriate under each subsection of Section 1104(a).

---

is a "total dump", and it "used to be a nice place to live, but it was sold to Deaktor Corp.", among other maintenance
and repair issues. The reviews are attached to the "List of Exhibits" filed simultaneously herewith as Exhibit "K."
RM:6389922:2

1.      Appointment of a Trustee is Appropriate
        Under Section 1104(a)(1).

Once the court has found that cause exists under 11 U.S.C. §1104(a)(1), there is no discretion and the independent Trustee must be appointed.  In Re: V. Savino Oil & Heating Co., 99 B.R. 518 (Bankr. E.D.N.Y. 1989).  "Cause" explicitly includes fraud, dishonesty, incompetence and gross mismanagement."  However, the examples for cause enumerated in 11 U.S.C. §1104(a)(1) are not exhaustive; rather, the court may find that cause exists for reasons not specifically set forth in the statute.  In Re: Cardinal Industries, Inc., 109 B.R. 755 (Bankr. S.D.Ohio 1990); In Re: Microwave Prods. of Am., Inc., 102 B.R. 666 (Bankr. W.D.Tenn. 1989).  In Re: Madison Management Group, Inc., 137 B.R. 275 (Bankr. N.D. Ill. 1992).

Cause is also found to exist in the following situations:  (i) when there is a conflict of interest by the shareholders of debtor-in-possession, who are operating the debtor, in the exercise of such shareholders' fiduciary duty to serve all creditors of the debtor; In Re: Telenet Hawaii, Inc., 105 B.R. 594 (Bankr. Hawaii 1989); see also In Re: United Church of the Ministers of God, 74 B.R. 271 (Bankr. E.D.Pa. 1987); (ii) where the debtor-in-possession is involved in the unauthorized sale of estate assets.  In Re: Nautilus of New Mexico, Inc., 83 B.R. 784 (Bankr. D.C.N.M. 1988); In Re: Ford, 36 B.R. 501 (Bankr. W.D.N.Y. 1983); (iii) when the debtor fails to follow proper record-keeping procedures to maintain the assets of the debtor's estate.  In Re: Nautilus of New Mexico, Inc., supra; In Re: Hotel Assoc.'s Inc., 3 B.R. 343 (Bankr. E.D. Pa. 1980); (iv) where excess compensation is paid to government; In Re: Work Am. Communications, Inc., 138 B.R. 175 (Bankr. W.D.Pa. 1992); (v) lack of confidence in the debtor's management; In Re: Madison Management Group, Inc., supra at 281; In Re: Cardinal Indus. Inc., supra at 765.

1.      Appointment of a Trustee is Appropriate
        Under Section 1104(a) (2).

RM:6389922:2

8

If sufficient cause does not exist to appoint a Trustee under §1104(a)(1), movant respectfully submits that the immediate appointment of a Trustee under §1104(a)(2) is plainly warranted.  See, e.g., In Re: Deena Packaging Industries, Inc., 29 B.R. 705 (Bankr. S.D.N.Y. 1983).  In applying Subsection (a)(2), "a court is allowed to exercise its broad equity powers when appointing a Trustee to protect the interests of creditors, equity security holders and other interests in the debtor's estate."  In Re: Russell, 60 B.R. 42 (Bankr. W.D.Ark. 1985).  11 U.S.C. §1104(a)(2) entails the exercise of the spectrum of discretionary powers in equitable considerations by the court, including cost benefit analysis, to determine whether an appointment of the Trustee is in the best interest of creditors, equity security holders and other interests of the estate.  In Re: V. Savino Oil & Heating Co., supra.

The following are factors courts consider in determining whether to appoint a trustee pursuant to 1104(a)(2):

(1)    The trustworthiness of the debtor;

(2)    The debtor-in-possession's past and present performance and prospects for the debtor's rehabilitation;

(3)    The business community's confidence (or lack thereof) in present management;

(4)    The benefits derived from the appointment of a trustee balanced against the cost of the appointment.

Additionally, when a debtor's business affects a large segment of the general public, consideration of the "public interest" becomes a very important factor in deciding whether to order the appointment of a trustee.  In Re: Ionosphere, 113 B.R. 164, 168 (Bankr. S.D.N.Y. 1990).

WHEREFORE, AmTrust Bank respectfully requests the entry of an order appointing a trustee for the Property and for such other relief as the Court deems just and proper.

RM:6389922:2

9

WE HEREBY CERTIFY that a true and correct copy of the foregoing was served via electronic transmission on all CM/ECF registered users this 4th day of May 2009.

WE HEREBY CERTIFY that we are admitted to the Bar of the United States District Court for the Southern District of Florida and are in compliance with the additional qualifications to practice in this Court as set forth in Local Rule 2090-1.

**RUDEN MCCLOSKY**
Attorneys for AmTrust Bank
701 Brickell Avenue, Suite 1900
Miami, Florida 33131-2336
Telephone: (305) 789-2733
Facsimile: (305) 537-3933

By_____
Lawrence A. Gordich
Fla. Bar No. 378097
Melissa Alagna
Fla. Bar No. 40555

RM:6389922:2

10