

ORDERED in the Southern District of Florida on August 31, 2010.

**Robert A. Mark, Judge**
**United States Bankruptcy Court**

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:                                                          Chapter  11

LUCKY CHASE II, LLC                              Case No. 09-18087-BKC-RAM

      Debtor.
_____/

### TENTH INTERIM ORDER: (I) AUTHORIZING USE OF CASH COLLATERAL BY TRUSTEE, (II) GRANTING ADEQUATE PROTECTION AND (III) SETTING FURTHER HEARING

THIS MATTER came to be heard before the Court on August 31, 2010 at 1:30 p.m. upon the Trustee's request for continued authority to use cash collateral.  Based upon the record in this case, the arguments of counsel, the proffered testimony of the Trustee, Kenneth A. Welt, and the Court being advised that the Federal Deposit Insurance Corporation (the "FDIC"), as receiver for AmTrust Bank ("AmTrust"), consents to the entry of this Order; the Court finds as follows:

      A.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

1

B.      An immediate and critical need exists for the Trustee to be permitted to use cash collateral to continue to operate and manage the Debtor's property in compliance with the budget attached hereto as **Exhibit A** (the "Budget") and this Tenth Interim Order to, *inter alia*, pay operating expenses, and maintain the estate's property so as to avoid immediate and irreparable harm to the estate and the value of its assets, and to afford the Trustee adequate time to negotiate and seek approval for additional cash collateral use.

C.      Good cause has been shown for the entry of this Tenth Interim Order.  Entry of this Tenth Interim Order will, *inter alia*, minimize disruption of the Debtor's business and operating expenses and permit the Trustee to meet the Debtor's operating expense obligations.  The cash collateral use arrangement authorized hereunder is vital to avoid immediate and irreparable harm to the Debtor's estate.  Absent the use of cash collateral, the Debtor's estate would not have the necessary funds to satisfy its ongoing obligations, including maintaining the collateral.  Allowing the use of cash collateral, therefore, is in the best interest of the Debtor's estate and of its creditors.

D.      The terms of such cash collateral use and adequate protection arrangements are fair and reasonable under the circumstances, and are designed and are likely to adequately protect the secured claim of AmTrust therein.

E.      The Court concludes that entry of this Tenth Interim Order is in the best interest of the Debtor, its estate and creditors, as its implementation will, *inter alia*, allow for the continued operation of the Debtor's existing business by the Trustee.

**ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:**

1.      Subject to the terms and conditions of this Tenth Interim Order, the Trustee may use the cash collateral to pay the ordinary and necessary business expenses of the Debtor as set forth on the Budget, but for professional fees and expenses, which will be separately considered.  The Trustee shall

2

not use any cash collateral to pay any items except substantially as set forth in the budget.  In this regard, the Trustee shall not exceed 10% of the line item amounts set forth in the Budget. Notwithstanding the foregoing, the Trustee may (i) use line item budgeted amounts on a cumulative basis, provided, however, that the Trustee may not modify allocations by line item within the Budget without the consent of the FDIC.

2.    To the extent provided for in the Budget, and in order to ensure the safety of the conditions on the Debtor's real property, the Trustee may use the cash collateral to pay for the repair, replacement and modification of the Debtor's real property other than in the ordinary course of business.

3.    Except as set forth herein and in the Budget, the Trustee agrees not to incur any other administrative expenses.

4.    Until entry of a further order providing such authority, the Trustee shall not make any payments for professional fees pursuant to this Budget without prior approval by the Bankruptcy Court after notice to the FDIC and the U.S. Trustee.

5.    The Trustee's right to use cash collateral under this Tenth Interim Order shall commence on the date of the entry of this Tenth Interim Order and expire on the earlier of (i) the date of entry of the final order (the "Final Order") granting use of cash collateral, or (ii) November 4, 2010, unless superseded by a final order, or extended by further order of this Court.

6.    In addition to the existing rights and interests of the FDIC and/or AmTrust in the cash collateral and for the purpose of providing adequate protection for the use of cash collateral, the FDIC, as receiver for AmTrust, is hereby granted a valid, perfected and enforceable security interest (the "Replacement Liens") equivalent to a lien granted under Section 364(c) of the Code in and upon all post-petition assets of the Debtor which are of the same nature or type as the Collateral in which

3

AmTrust had an interest prior to the commencement of this chapter 11 case (but excluding claims or causes of action of the Debtor or the estate available through the exercise of the powers granted pursuant to sections 542, 544, 547, 549, 550, 551 and 553 of the Code) whether such property was owned on the Petition Date or thereafter crated, acquired or arising, and all improvements, additions and extensions thereto, and all replacements thereof.

7.      The Replacement Liens herein granted: (i) are and shall be in addition to all security interests, liens and rights of set-off existing in favor of AmTrust; (ii) are and shall be valid, perfected, enforceable and effective as of the date of the entry of this Interim Order without any further action by the Debtor, the Trustee, or the FDIC, and without the necessity of the execution, filing or recordation of any financing statements, security agreements, mortgages or other documents; and (iii) shall secure the payment of indebtedness to the FDIC as receiver for AmTrust, as the case may be, in an amount equal to any diminution in the value of the cash collateral or any other Collateral occurring from and after the Petition Date.

8.      The Trustee shall maintain all necessary insurance, including, without limitation, life, fire, hazard, comprehensive, public liability, and worker's compensation as may be currently in effect, and obtain such additional insurance in an amount as is appropriate for the business in which the Debtor is engaged, naming AmTrust as an additional insured and loss payee with respect thereto.

9.      The Trustee shall furnish to the FDIC, or as may be more appropriate, its respective counsel or other advisors, such financial and other information as the FDIC shall reasonably request, but not more than required by the Renewed Mortgage and Security Agreement, and the FDIC shall be given reasonable access to the books, records and documents of the Debtor.

10.     The provisions of this Tenth Interim Order shall remain in full force and effect unless modified or vacated by subsequent Order of this Court.  If any or all of the provisions of this Tenth

Interim Order are modified, vacated or stayed by subsequent Order of this or any Court, such stay, modification or vacation shall not affect the validity and enforceability of any lien, priority, or benefit, or application of payment authorized hereby with respect to any indebtedness of the Debtor to the FDIC as receiver for AmTrust.

11.    The provisions of the Tenth Interim Order and any actions taken in accordance with the Tenth Interim Order shall survive entry of any Order that may be entered: (a) confirming any plan of reorganization, (b) converting this chapter 11 case to a case under chapter 7 of the Code, or (c) dismissing this case.  The claims and liens, including the Replacement Lien, on the Collateral shall continue in full force and effect and maintain their priority until all of the obligations owed to AmTrust under the terms of the Renewal Mortgage and Security Agreement this Tenth Interim Order are indefeasibly paid in full.

12.    The entry of this Order is without prejudice to the FDIC seeking a modification or termination of this Order or the further use of cash collateral upon application to this Court on notice to the Trustee and parties in interest.

13.    Further hearing on the Trustee's continued authority to use cash collateral shall be convened on **November 3, 2010 at 10:00 a.m. at the United States Bankruptcy Court, Claude Pepper Federal Building, 51 Southwest First Avenue, Courtroom 1406, Miami, Florida.**

###

Submitted by:
Michael L. Schuster, Esq.
Genovese Joblove & Battista, P.A.
Counsel to Chapter 11 Trustee
100 SE 2nd Street, Suite 4400
Miami, FL 33131
Telephone:  (305) 349-2300
Facsimile:   (305) 349-2310

5

Copy to: Michael L. Schuster, Esq., who is directed to serve a conformed copy of this Order on all parties in interest and file a certificate of service with the Court.

EXHIBIT A

**Lucky Chase II, LLC**
**c/o Kenneth A. Welt, Trustee**
**9 Week Cash Flow Projection- Detail**
**USD ($Actual)**

| | Budget Week Ending 9/10/2010 | Budget Week Ending 9/17/2010 | Budget Week Ending 9/24/2010 | Budget Week Ending 10/1/2010 | Budget Week Ending 10/8/2010 | Budget Week Ending 10/15/2010 | Budget Week Ending 10/22/2010 | Budget Week Ending 10/29/2010 | Budget Week Ending 11/5/2010 | 9 Week Budget Total |
|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Cash Balance | $ 250,000 | $ 237,105 | $ 295,820 | $ 220,725 | $ 221,540 | $ 272,445 | $ 265,160 | $ 286,085 | $ 191,207 | $ 250,000 |
| **Receipts:** | | | | | | | | | | |
| Rental Revenue[1] | 80,000 | 80,000 | 30,000 | 10,000 | 80,000 | 80,000 | 30,000 | 10,000 | 10,000 | 410,000 |
| **Total Receipts** | $ 80,000 | $ 80,000 | $ 30,000 | $ 10,000 | $ 80,000 | $ 80,000 | $ 30,000 | $ 10,000 | $ 10,000 | $ 410,000 |
| **Disbursements:** | | | | | | | | | | |
| Operating Expenses | | | | | | | | | | |
| Advertising | 100 | - | - | - | 100 | - | - | - | - | 200 |
| Bulky Trash Removal | - | 1,000.00 | - | - | - | 1,000.00 | - | - | - | 2,000 |
| CAM - On Site Manager | 6,000 | - | - | - | 6,000 | - | - | - | 6,000.00 | 18,000 |
| Gross Payroll - On Site Maintenance/Office Personnel | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 27,000 |
| Postage and Delivery | 150 | 50 | 50 | 50 | 150 | 50 | 50 | 50 | 50 | 650 |
| Office Expenses | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 100 | 100 | 1,600 |
| Pest Control | - | 100 | - | 100 | - | 100 | - | 100 | - | 400 |
| Repairs & Maintenance/ Cleaning/Parts/Supplies[2] | 15,000 | 10,000 | 10,000 | 5,000 | 15,000 | 10,000 | 5,000 | 5,000 | 5,000 | 80,000 |
| Filing Fees - evictions | - | - | - | - | 2,000 | - | - | - | - | 2,000 |
| Utilities | - | 5,000 | - | - | - | 5,000 | - | - | - | 10,000 |
| Insurance[3] | - | - | 22,291 | - | - | - | - | 22,219 | - | 44,510 |
| **Total Operating Expenses** | $ 24,450 | $ 19,350 | $ 35,541 | $ 8,350 | $ 26,450 | $ 19,350 | $ 8,250 | $ 30,469 | $ 14,150 | $ 186,360 |
| Non-Operating | | | | | | | | | | |
| HOA Funding[4] | 60,000 | - | 60,000 | - | - | 60,000 | - | 60,000 | - | 240,000 |
| Other Bankruptcy Filing Fees | - | - | - | - | - | - | - | 4,875 | - | 4,875 |
| **Total Non-Operating Expenses** | $ 60,000 | $ - | $ 60,000 | $ - | $ - | $ 60,000 | $ - | $ 64,875 | $ - | $ 244,875 |
| **Total Disbursements[5]** | $ 84,450 | $ 19,350 | $ 95,541 | $ 8,350 | $ 26,450 | $ 79,350 | $ 8,250 | $ 95,344 | $ 14,150 | $ 431,235 |
| 10% Contingency Reserve[6] | 8,445 | 1,935 | 9,554 | 835 | 2,645 | 7,935 | 825 | 9,534 | 1,415 | 43,124 |
| Net Change in Cash | (12,895) | 58,715 | (75,095) | 815 | 50,905 | (7,285) | 20,925 | (94,878) | (5,565) | (64,359) |
| Ending Cash Balance | $ 237,105 | $ 295,820 | $ 220,725 | $ 221,540 | $ 272,445 | $ 265,160 | $ 286,085 | $ 191,207 | $ 185,642 | $ 185,642 |

Notes:
(1) Estimated cash collections
(2) Repairs and maintenance to be initiated at the discretion of the Trustee with the input of local and state officials and agencies.
(3) Prior period budget contemplated a down payment towards the renewal of the insurance policy. However, the payment is not due until July as the policy actually expires on July 31, 2010. Accordingly, the payment will be issued in this cash collateral period. The starting balance of this budget period accounts for the fact that the down payment was not made. The financing agreement has yet to be provided. Accordingly, the down payment amount is estimated at 20% of renewal policy amount (based on prior year information). The monthly payments are estimated based on the down payment and
(4) Estimated monthly shortfall. Includes monthly cost to complete fire alarm system repairs.
(5) Operating expenses do not include professional fees. The Trustee and his professionals will seek reasonable fees to be paid upon Court approval. It is estimated that professional fees will be incurred at a collective rate of $45,000 per month.
(6) The contingency is included to account for the possibility of unknown repairs and maintenance issues that may arise and/or an unanticipated increases in other necessary operating expenses.